# George C. Kennedy's Disbarment.   George C. Kennedy's Appeal.

*Attorneys at law—Disbarment—Insanity.*

On a rule to disbar an attorney at law who has been guilty of embezzlement, the defense of insanity will not be considered as established where the only testimony on the subject is that of the respondent's physician, whose testimony is weakened by the positive evidence of other reputable witnesses that he had employed the respondent to attend to legal business about the time of the embezzlement, and that he had said subsequently, when interrogated particularly with reference to the respondent's peculiarities and mental condition, that he was of sound mind.

The disbarment of an attorney at law for embezzlement will not be revoked because the respondent was acquitted in the criminal court of the charge of embezzlement, on the ground of insanity, and was committed to an insane asylum and subsequently discharged as cured.

Argued Oct. 5, 1896. Appeal, No. 507, Jan. T., 1896, by George C. Kennedy, from order of C. P. Lancaster Co., Trust

Book No. 15, page 244, making absolute a rule to disbar him. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Rule to disbar an attorney at law.

BRUBAKER, J., filed the following opinion:

The petition in this case represents "that the persons who signed the same are members of the Lancaster bar and the board of censors of the Lancaster Bar Association, which association has for its objects, inter alia, 'The general supervision and conduct of members of the bar, and of all persons connected officially with the administration of the law, or in charge of the public records; and in cases of any breach of duty on their part, the institution of such proceedings as may be lawful or proper in respect thereto. . . . The improvement of the law and of its administration; the protection of the bar and of judicial tribunals, their officers and members from invasion of their rights, and the maintenance of their proper influence.'

"That the said committee of censors, according to the constitution of said Lancaster Bar Association, has charge of said business of the association, and it is their right and duty whenever any matter relating thereto is brought to their notice to take such action on behalf of the association as they may deem proper; that Sue A. Himes has presented to said committee of censors an affidavit, which is appended hereto and made part of this petition; that at a recent meeting of said Lancaster Bar Association your petitioners were directed to institute proceedings to have a rule entered by the court upon G. C. Kennedy to show cause why his name should not be stricken from the list of attorneys practicing at the Lancaster bar, which action was taken by reason of the representations of fact set forth in said petition; that an examination of the records of and proceedings in the courts of Lancaster county, specifically referred to and set forth in said affidavit shows that said facts, or the most of them are matters of record, or have been made matters of legal proof."

On this petition a rule was entered in accordance with the prayer of the petitioners on said Kennedy to show cause why his name should not be stricken from the list of attorneys prac-

ticing in the several courts of Lancaster county. C. E. Montgomery, Esq., was appointed examiner to take testimony on said rule and report the same to the court on the Saturday preceding the third Monday in March, 1895, with notice to A. F. Hostetter, Esq., for the board of censors, and J. Hay Brown and T. B. Holahan, Esqs., for G. C. Kennedy, at bar. No answer was filed to the petition. Counsel for the respondent, however, appeared before the examiner. The following are the facts adduced from the testimony taken, which was submitted to us at the March term of the argument court:

In the spring of 1892, G. C. Kennedy, then a member of the bar practicing in these courts, procured from Reese L. Himes $2,000, to be loaned to B. F. Henry on a mortgage, an existing lien of $1,000 on the property was to be paid out of this money; that Kennedy kept $1,000 of the money and failed to pay off the lien. In the fall of 1893 Kennedy procured from Himes $350, for which he gave to Himes an obligation that purported to be an obligation of W. M. Tinsley, of Marietta, to him, Kennedy, and by him indorsed to Himes. Tinsley testified that the note was a forgery; that he never had any business relations of any kind with Kennedy; that he had not signed the Himes note or any other, and that the whole transaction was a fraud. On April 1, 1892, the said Kennedy received from John B. Milleysack $840, principal and interest on a mortgage due to Susan A. Himes, from whom he had procured a power of attorney to satisfy said mortgage; which money he has never paid over to his client. On April 1, 1892, Kennedy, as the attorney of Sarah Himes, received from John S. Dombach $2,000, for the transfer of a mortgage, which money was to be paid to his said client, and which he embezzled and retained, and never paid over to her.

The only testimony submitted to us on behalf of the respondent is that of his physician, whose honesty and learning we do not question. His testimony, however, has been weakened by the positive evidence of other reputable witnesses that he had employed the respondent to attend to legal business about the time that the acts in question were done, and that he had said subsequently, when interrogated, particularly with reference to his peculiarities and mental condition, that he was of sound mind.

It will be noticed that the respondent does not deny the material allegations and charges thus specified and proved. The defense made by his counsel is that of insanity. As we understood them to say when the case was submitted to us, it was made for the sole purpose of moving the conscience of the court towards a suspension instead of an expulsion from the bar. It must, therefore, be conceded that the conduct and the acts of the respondent, as an attorney and a member of the bar, if he was sane, justify severe censure and punishment.

The relation of attorney and client is well understood by the legal profession. The measure of fidelity due the client is fully given by our Supreme Court. In re Samuel Davies, 93 Pa. 116, Justice MERCUR says: "An attorney at law sustains an important relation in the administration of justice. He possesses certain powers and privileges from which others are excluded, and assumes important duties and obligations towards both court and client. He is an officer of the former and a representative of the latter. His position is so responsible, his opportunities for good and for evil are so many that both statute and common law have united in throwing all reasonable safeguards around his conduct. Before he can be admitted to the bar, the act of assembly requires him to take an oath or affirmation, inter alia, that he will behave himself in the office of attorney within the court, according to the best of his learning and ability, and with all good fidelity as well to the court as to the client." And as to the authority of the court the justice says: "The power of a court to admit as an attorney to its bar, a person possessing the requisite qualifications, and to remove him therefrom when found unworthy, has been recognized for ages and cannot now be questioned. In fact, the power for removal for just cause is as necessary as that of admission for a due administration of law. By admitting him the court presents him to the public as worthy of its confidence in all his professional duties and relations. If afterwards it comes to the knowledge of the court that he has become unworthy, it is its duty to withdraw that indorsement, and thereby cease to hold him out to the public as worthy of professional employment." The same court in Dickens' Case, 67 Pa. 169, comments upon the necessary qualifications of a member of the legal profession. Judge AGNEW there says: "Integrity, as well as skill and

learning, is essential to the character of the profession, and it becomes the duty of the bench as well as of the bar itself, to preserve that character in its highest state, as a means of usefulness, and of answering the true end of a profession so honorable and at the same time so needful. Notwithstanding the prejudices of some, the ignorance of others, and even the discredit occasionally brought upon the office by unworthy members, we are glad to know that the bar is filled with many worthy men, and that a trust and confidence almost unlimited is justly reposed in it by the public."

Was the respondent responsible for his acts? The defense of insanity is a novel one in a proceeding of this kind. If we were satisfied by the evidence that the respondent was of such unsoundness of mind as to be actually insane and to render him unable to have known the difference between right and wrong, we might feel inclined to follow the suggestions of his counsel in this matter, as a suspension in such a case would serve the same purpose as an expulsion. The proof before us, however, on this question is, at best, of a weak and unsatisfactory nature. It would be insufficient, in our opinion, as an available defense for a defendant in any proceeding either in law or in equity. In the absence of corroborative evidence in behalf of the respondent, we would not be justified in holding that he was irresponsible for his acts, and especially, since there has been no testimony adduced in his behalf by his learned counsel from members of his own profession, with whom he had been actively engaged in practice up to the time of the disclosure of the wrongs committed. Mere eccentricity of manner or peculiarity of conduct would not be a sufficient explanation of or excuse for his conduct. Under the evidence we are compelled to conclude that the respondent is guilty of all the charges preferred against him in this proceeding, and that the defense made in his behalf is insufficient. Therefore, exact justice in this case demands that the court, the bar and the public shall be protected from such gross misbehavior as this case clearly shows was practiced by the respondent. It is, therefore, ordered and decreed that the name of G. C. Kennedy be stricken from the roll of attorneys admitted to practice law in the several courts of Lancaster county.

Subsequently Kennedy filed the following petition:

The petition of the undersigned respectfully represents : That the board of censors of the Lancaster Bar Association on the 22d day of January, 1895, presented their petition to your honorable court setting forth that one Susan A. Himes had presented a petition to the said board of censors making certain charges against this petitioner, and praying your honorable court for a rule to show cause why the name of your petitioner should not be stricken from the roll of attorneys practicing in the courts of Lancaster county, and that on the same day your honorable court granted the said rule as prayed for ; that on February 23, 1895, an examiner was appointed to take testimony and report the same to the court; that from the time of the presentation of the said petition to the time of making the order or decree of the said court, the mental condition of this petitioner was such that he was unable to file an answer to the said rule or to appear at the taking of said testimony ; that on June 22, 1895, the said court made said rule absolute, striking your petitioner's name from the roll of attorneys practicing in the courts of Lancaster county ; that at the November term, 1895, of the court of quarter sessions of Lancaster county, upon returns made by Jeremiah Rife, one of the aldermen of the city of Lancaster, to said court, true bills were found by the grand jury on all and every the identical charges on which testimony was taken before the examiner, and on which the decree of the court, as set forth in the court's opinion, was founded, said indictments being numbers 122, 123, 145 and 147, November sessions of the said court of quarter sessions ; that on the 13th day of December, 1895, the said cases came on for trial before a jury, and that said jury found a verdict of not guilty on the ground of insanity ; that on the 25th day of January, 1896, the said court of quarter sessions ordered and directed that your petitioner be committed to the Lancaster county hospital for the insane, there to be confined, maintained and treated until discharged by your court, as provided by law ; that on the 7th day of February, 1896, upon the petition of the board of directors and resident physician of the hospital, setting forth that the mental condition of your petitioner was .such that no further confinement was necessary, and praying for his discharge, the said court of quarter sessions appointed a commission consisting of doctors

M. L. Herr, J. W. Houston and M. L. Davis, who, on the 8th day of February, 1896, on examination of your petitioner, recommended his said discharge and thereupon February 10, 1896, court ordered and decreed that your petitioner be discharged from said hospital.

Your petitioner therefore further showing that his health has now been entirely restored and his mental unsoundness cured prays the court that the record of the court of quarter sessions referred to in this petition be made a part of this proceeding and that thereupon the said order of court made June 22, 1895, striking this petitioner's name from the roll of attorneys admitted to practice in the several courts of Lancaster county, be rescinded or revoked, and that the name of this petitioner be restored to said roll, and he will ever pray, etc.

The court made the following order:

The credit of the Lancaster bar and the safety of the people of the county require that the decree above mentioned should not be revoked. The petition to revoke the said order is now dismissed.

*Errors assigned* were (1) striking appellant's name from the roll of practicing attorneys; (2) refusing to revoke the decree of disbarment.

*T. B. Holahan* and *J. Hay Brown*, with them *C. E. Montgomery*, for appellant.—An attorney cannot be summarily disbarred without trial by jury and conviction on charges of which, if guilty, he could be convicted: Case of H.-T., 2 Pennypacker, 99; Ex parte Steinman & Hensel, 95 Pa. 237; Shoemaker's App., 2 Pa. Superior Ct. 27; Dicken's Case, 67 Pa. 176; H.'s Case, 5 Dr. Cep. 6; Stack v. O'Hara, 90 Pa. 477; Act of May 18, 1893, P. L. 94.

A lunatic in Pennsylvania is entitled, upon his recovery, to a reconveyance of all his estate from his committee.

*A. F. Hostetter*, with him *A. J. Kauffman*, *M. Brosius* and *W. U. Hensel*, for appellee, cited: Davies' Case, 93 Pa. 120; Dicken's Case, 67 Pa. 177; Slaymaker v. Herr, 12 Lanc. Law Rev. 342; In re Gates, 17 W. N. C. 142; Jones' Case, 2 D. R. 538;

Evans' Case, 3 Lanc. Law Rev. 305; Chambers v. Miller, 7 Watts, 63; Serfass' Case, 116 Pa. 455.

PER CURIAM, November 9, 1896:

One of the specifications challenges the correctness of the decree of June 22, 1895, striking appellant's name from the roll of attorneys admitted to practice in the several courts of Lancaster county; the other complains of the decree of June 27, 1896, dismissing his petition to revoke the former decree.

The first decree was clearly warranted by the facts then before the court and upon which it appears to have acted. The facts subsequently presented were insufficient to entitle appellant to the revocation prayed for. We find nothing in the record that would justify a reversal or modification of either decree; nor do we think there is anything in the specifications of error that requires discussion. They are both dismissed.

Decree affirmed and appeal dismissed at appellant's costs.