(No. 23405 ▉▉▉▉▉▉▉▉)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DAVID Y. PATLAK, Plaintiff in Error.

*Opinion filed February 19, 1936—Rehearing denied April 15, 1936.*

C. A. CAPLOW, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, RICHARD H. DEVINE, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

David Y. Patlak, an attorney at law, was convicted in the criminal court of Cook county of larceny of $523 belonging to his client, August Krieter. The cause is here on writ of error.

The testimony of the People shows that between October 3 and October 9, 1933, Krieter employed defendant to re-finance a defaulted mortgage loan of $14,000 and paid him an attorney's fee of $700 and also $523 to pay back taxes; that defendant represented the loan could be re-financed for not more than $8000 out of which the attorney fee and taxes would be refunded; that he made no effort to secure the new loan and kept the money Krieter paid him. Defendant was surrendered to the State's attorney's office on December 11, 1933, and taken into custody. At a sanity trial on January 12, 1934, he was found insane and committed to the Illinois Security Hospital. He remained there until December 14, 1934, when he was released as improved. Shortly thereafter he was discharged as cured. On January 15, 1935, he was again taken into custody and at another hearing he was found to be sane. His trial and conviction on the criminal charge followed.

Five lay witnesses, three of whom had been office associates of defendant for several years, testified to irrational acts and conduct of defendant from 1927 up to October, 1933, and that in their opinion he was insane at the time of the alleged offense.

Defendant was afflicted with diabetes of long standing and has had chorea, or St. Vitus' Dance, since he was eighteen or nineteen years of age. Five alienists testified on the subject of his mental condition. Dr. James M. McManus, managing officer of the Illinois Security Hospital, had defendant under daily observation from February 15, 1934, until May 23. On the latter date he was given a physical and mental examination. The witness testified that defendant had an advanced case of diabetes, was afflicted

with dementia praecox, and was a victim of auditory and visual hallucinations; that he had no opinion as to when the mental condition originated nor whether defendant was insane in the month of October, 1933, and that defendant responded favorably to a diabetic diet with a resulting improvement in his mental condition.

Dr. David P. Phillips, specialist in mental diseases, connected with the Illinois Security Hospital, examined defendant on June 26, 1934, and found him gradually emerging from a mental illness. He still had some confusion and slowness of thought and the witness could not tell how long defendant's mental condition had existed.

Dr. Harold S. Hulbert, a specialist in mental diseases, in response to a hypothetical question, testified that in his opinion defendant was insane in October, 1933.

Dr. Harry R. Hoffman, director of the behavior clinic of the criminal court of Cook county, was called as the court's witness. He testified that at defendant's first sanity hearing he made a physical and mental examination of defendant and an exhaustive inquiry into his history; that defendant had hallucinations of God talking to him, of murderous assaults, perverted sexual relations, vast holdings and of making millions of dollars, and that from his examination and investigation he concluded defendant was suffering from dementia praecox and diabetes. However, at the sanity hearing in January, 1935, Dr. Hoffman testified defendant was sane on that date. At the trial in the instant case he testified he had changed his mind and in his opinion defendant's mental illness at the time of his first examination was precipitated by his arrest and incarceration, due most likely to his diabetic condition, and that after hearing all the witnesses, excluding opinion testimony, his conclusion was that defendant was sane at the time of his alleged offense.

Dr. John A. Larson, psychiatrist connected with the Illinois Security Hospital, was a witness on the part of the

People. He testified that he examined defendant on February 21, 1934, found him suffering from a psychosis with hallucinations and that he was mentally sick with a disease which affected his entire personality.

The medical testimony shows that defendant was afflicted with a mental illness and a toxic condition resulting from his physical ailments. He was nervous and had exaggerated ideas of his business connections and financial affairs. Before his arrest he entertained, without any substantial basis, fanciful ideas of re-financing difficult real estate projects.

Four lay witnesses, each of whom had a business transaction with defendant, testified that in their opinion he was sane. Three of them apparently had unsatisfactory dealings with him. Among the lay witnesses for the People was James J. Cherry, an assistant State's attorney. He testified that defendant was brought to the State's attorney's office and the witness asked him concerning complaints filed in that office in the Krieter case, the O'Malley case, the Weber case, the Sergeant Hass case, and what he did with the money received in those cases; that defendant said he kept it for legal fees and that during two years prior to December 11 he received between $33,000 and $35,000; that defendant said six complaints had been made against him to the Bar Association; that he lost the money he received from clients in speculating; that he transferred certain property to a Mrs. Diamond and re-paid a man named Peters $4000 which Peters had bothered him about; that a man who had sent clients to him had committed suicide, and another with whom he had dealings had been shot and killed, and that he was afraid of the complainants.

William J. Meldon, another assistant State's attorney, testified that in November, 1933, in the State's attorney's office, he had a conversation with defendant relating to the misapplication of moneys turned over to him by a num-

ber of complainants then present, including Krieter; that defendant admitted none of the money had been re-paid and said he might be able to make restitution. Both of the assistant State's attorneys testified that in their opinion, defendant was sane. Objections to their testimony relating to other offenses and a motion to withdraw a juror were overruled.

The general rule is that non-experts who have had opportunity to observe a person may give their opinions of his mental condition or capacity, based on facts observed, including conversations with him. To render such opinions admissible they must be limited to conclusions drawn from the specific facts to which they testify. (*People* v. *Krauser*, 315 Ill. 485; *Jamison* v. *People*, 145 id. 357.) However, in this case it is apparent that the effect of the testimony of the assistant State's attorneys was to get the other offenses before the jury rather than to prove sanity. These witnesses had never seen the defendant prior to his appearance at the State's attorney's office. They had but one conversation with him and the jury were not warranted in giving much weight to their opinions of defendant's mental condition. Their testimony was highly prejudicial to defendant and it militated against a fair trial. *People* v. *Bishop*, 359 Ill. 112; *People* v. *Lewis*, 313 id. 312; *People* v. *Pfanschmidt*, 262 id. 411.

The law presumes all men are sane. In order to entitle an accused to an acquittal on the ground of insanity this legal presumption must be overcome by evidence tending to prove insanity which is sufficient to raise a reasonable doubt of sanity at the time the act was committed. (*People* v. *Bacon*, 293 Ill. 210.) Whenever there is evidence tending to show the accused was insane at the time of committing the act, the burden devolves upon the People, regardless of the presumption, to prove, beyond a reasonable doubt, that at that time the accused had sufficient mentality to distinguish and choose between right and wrong as to

the particular act. *People* v. *Cochran,* 313 Ill. 508; *People* v. *Lowhone,* 292 id. 32.

A review of the testimony shows that the prosecution failed to make such proof. On the other hand the testimony is sufficient to raise a reasonable doubt of defendant's sanity at the time of his alleged offense.

The judgment of the criminal court is therefore reversed.

*Judgment reversed.*