(No. 22299.

*In re* DAVID Y. PATLAK, Attorney, Respondent.

*Opinion filed April 15, 1938—Rehearing denied June 8, 1938.*

CHARLES LEVITON, *amicus curiæ.*

DAVID Y. PATLAK, *pro se,* and NUDELMAN & DEUTCH, (GRENVILLE BEARDSLEY, of counsel,) for respondent.

Mr. JUSTICE STONE delivered the opinion of the court:

This disbarment proceeding originally came to this court on a report of the commissioners of this court dated December 18, 1933, made on testimony heard on complaints by some twenty different complainants. In the interim re-

spondent was tried and convicted in the criminal court of Cook county on an indictment charging larceny. This court reversed the conviction in *People* v. *Patlak,* 363 Ill. 40, and, on motion of respondent, the cause was re-referred to the commissioners on April 21, 1936, and by that order this court directed the commissioners to permit respondent to offer evidence in his own behalf. In the meantime further complaints by Julia O'Malley and Elizabeth Klein were filed and the commissioners, in fairness to respondent, proceeded to hear the matter *de novo.* But five of the complaints were considered by the commissioners,—*i. e.,* those of Joseph and Mary Zajdel, C. E. Kacin, H. Burton Schatz, Julia O'Malley and Elizabeth Klein.

The complaint of Joseph and Mary Zajdel was that respondent received $1750 to pay taxes and reduce a mortgage on stated premises; that they had never received anything and that respondent had done nothing. The answer admitted having received $1250, but alleged that $820 had been expended, leaving a net fee of $420 of what was to be an agreed $1000 fee. The complaint of Kacin was that he owed $4100, secured by collateral of the Builders and Merchants Bank, then closed; that respondent said it would be necessary for Kacin to give him cash to make settlement and he gave him $150 as a retainer and $2750, $250 of which was to be respondent's fee, the balance to be used for settlement of the indebtedness and the return of the collateral. Later, respondent offered to get Kacin's tax bill reduced fifty per cent and he gave him $200 for this purpose. The collateral was not returned nor were the taxes reduced. The respondent, in various payments, returned $822.78. Respondent's answer admitted the receipt of $3100 but denied that there were any moneys due Kacin except $37. The complaint of H. Burton Schatz charged that he delivered to the respondent $100 on account of the respondent's offer to settle a note of $1500 with the receiver of the Congress Trust and Savings Bank, and if no

settlement was made within thirty days the $100 was to be returned. No settlement was effected and no refund was made. No answer was filed to this complaint. The complaint of Julia O'Malley was that at the time the Builders and Merchants Bank and Trust Company of Chicago was closed she owed that bank $4000, secured by collateral of the par value of $5000; that respondent told her he knew Will H. Wade, the receiver; told her he could settle her note and get her collateral back and save her $1500, for which he would charge her twenty-five per cent of the savings, and that she gave him a total of $2750, taking two receipts from respondent set out in the complaint. Respondent's answer neither admitted nor denied various paragraphs of the complaint; admitted receipt of $100; denied any promise; alleged he rendered *plenty* of services on foreclosure proceedings; relied on a general insanity issue and a general denial. The complaint of Elizabeth Klein alleged that she and her husband, Adam, were in default on a first and second mortgage on their two-apartment building. Respondent told her that before he could do anything for her it was necessary to pay up the taxes and special assessments. She paid him money for the purpose of paying taxes aggregating $541.50, but the taxes were not paid and that only $15 had been returned. Respondent's answer neither admitted nor denied certain portions of the complaint, made a general denial as to other portions, and charged that at the time of the alleged offense he was insane. The evidence under the enumerated complaints substantiated the complaints in each instance and as respondent offered no testimony to refute that of the several complainants it will not be necessary to detail that evidence.

Respondent did not testify in his own behalf, relying solely upon the defense of insanity and that the judgment in *People* v. *Patlak, supra,* was and is *res judicata.*

The commissioners found that respondent's conduct with reference to Joseph and Mary Zajdel was unprofessional

and dishonorable and that he was guilty of moral turpitude in connection with obtaining moneys from them; that, with reference to C. E. Kacin, respondent converted $1877.22 and was guilty of moral turpitude and unethical conduct; with reference to Julia O'Malley, that respondent converted $2350 of her money, that his conduct was unprofessional and dishonorable and he was guilty of moral turpitude. With reference to H. Burton Schatz, that respondent converted $100 of complainant's money and was guilty of moral turpitude and unprofessional conduct. With reference to the complaint of Elizabeth Klein, that respondent converted $526.50 to his own use and was guilty of unprofessional conduct and moral turpitude in failing to return the same.

The commissioners further found respondent was sane at the time of the hearing; that he had been so adjudicated and his conduct of the case, his intelligent grasp of the proceedings, his detailed and accurate recollection as evidenced by his cross-examination, convinced the commissioners that he had been restored to his sanity; that all of the claims were found to be well grounded and covered the conversion of money, and at no time did respondent take the stand and testify in his own behalf; that his answers were not supported by any competent evidence; that respondent did not at any time indicate regret for any occurrence or claim that he had made any attempt to make restitution; that for failure to take the stand and make defense to the claims, respondent, in effect, confessed his guilt with the exception as to his defense of insanity; that his failure to indicate regret or to make any attempted restitution, after his release from custody and he was pronounced sane, was not the position of an honest man.

Respondent's defense was confined to the question of his sanity from June, 1931, to December, 1933. The evidence is conflicting and in the view we take of this case, we do not think it necessary to review at length the evidence

on that point. The commissioners found respondent guilty of unethical conduct and recommended his disbarment. Respondent's objections and exceptions to the report, relied upon to reverse the finding of the commissioners, set forth five points, but in his argument he has reduced the same to three, the first two having to do with the sufficiency of the testimony with reference to his sanity and the failure of the complainants to sustain the burden of showing he was sane, and, third, that the decision of this court in *People* v. *Patlak, supra,* was *res judicata.*

We will first discuss the question of *res judicata.* Respondent contends the holding in *People* v. *Patlak, supra,* that the testimony was sufficient to raise a reasonable doubt of his sanity, is *res judicata* that he was insane at the period of time alleged in the instant proceeding. The rule is that a judgment of conviction or acquittal upon the merits, upon a trial on an indictment, will ordinarily be treated by this court as conclusive of the guilt or innocence of an attorney at law upon a subsequent trial upon information for disbarment for the same offense. (*People* v. *John,* 212 Ill. 615; *People* v. *Comstock,* 176 id. 192.) In *People* v. *Goodman,* 366 Ill. 346, a case of contempt of this court for practicing law without a license so to do, it was contended there was an estoppel by reason of the reversal of a conviction on information under "An act to prevent and punish frauds in the practice of law," (State Bar Stat. 1935, chap. 38, par. 281, p. 1187,) by the Appellate Court. (*People* v. *Goodman,* 259 Ill. App. 667.) This court, in passing upon that contention, said: "A judgment or decree will not operate as an estoppel unless the identical issue was raised and decided in the former proceeding. (*Svalina* v. *Saravana,* 341 Ill. 236, 247; *Gouwens* v. *Gouwens,* 222 id. 223; *Sawyer* v. *Nelson,* 160 id. 629.) The issues decided in the criminal case are materially different from those here for determination. The judgment in *People* v. *Goodman, supra,* does not work an estoppel."

The charge in *People* v. *Patlak, supra,* was the larceny, between October 3 and October 9, 1933, of $523 belonging to August Krieter, a client. None of the five complaints heard in the instant case, and on which the commissioners based their finding, involved any dealing of respondent with Krieter, nor were any of the dealings complained of transacted between October 3 and October 9, 1933. There is nothing in the record, nor is respondent's argument, persuasive to show that *People* v. *Patlak, supra,* is *res judicata* or that estoppel can be successfully maintained against the record now before us. This court in several cases has held that common law rules of pleading, or rules observed in criminal cases, are not controlling in disbarment proceedings. (*In re Kettles,* 365 Ill. 168; *In re Malmin,* 364 id. 164; *In re Needham,* id. 65.) Respondent's contention that *People* v. *Patlak, supra,* is *res judicata* of the inquiry here, cannot be sustained.

Respondent's other contentions have to do solely with his defense of insanity. The testimony is conflicting as to whether Patlak was sane or insane on the respective dates he had the transactions with the five named complainants from each of whom he took money, and promised to perform, for hire, certain specific services. In each case no proof of services rendered was made. Therefore, unless the defense of insanity is a bar, the charges stand fully proved and the recommendation of the commissioners should be followed. As we view the record a resume of the testimony upon the sanity or insanity of respondent is not necessary, for respondent admits he is now sane. This is a civil proceeding to determine the fitness of respondent to have his name retained on the roll of attorneys of this court. For the purposes of this opinion it can be conceded that respondent was insane, at least in the later months of 1933. He was so adjudged by a court of competent jurisdiction, confined for institutional treatment and later restored to his reason and standing, and continued to be a sane man up to

and including the close of the testimony we are considering. We do not understand that respondent's contention is that he is not now fully restored mentally but that, at the time the respective transactions took place about which complaints were made and prosecuted, he was insane, hence did not know what he did and cannot be disbarred for anything he did while so insane. That question has not been previously passed upon by this court, but in *In re Kennedy's Disbarment*, 178 Pa. 232, 35 Atl. 995, and *In re Manahan*, 186 Minn. 98, 242 N. W. 548, and *In re Fitzgibbons*, 182 Minn. 373, 234 N. W. 637, it was held that insanity, whether the attorney was restored to reason or not, was not a bar to the entry of an order striking the name of the attorney from the roll of attorneys. While insanity proved, is a defense to a criminal charge, yet a disbarment proceeding is for more than the single purpose of punishment. There is also the even more important purpose of protecting the public from unscrupulous and dishonest lawyers. Though a man be shown to be insane, the public have a right to protection against his activities in the practice of law, particularly when the symptoms of his insanity include a penchant for keeping the money of others without rendering services or account therefor.

It is the duty of this court not only for the protection of the good name of the bar of the State but also for the protection of the public, to remove the names of dishonest attorneys from the roll. Whether the respondent knew what he was doing at the respective times he received the several amounts of money from the complaining witnesses is not of controlling influence in this proceeding. The cross-examination of complaining witnesses, conducted by respondent personally, reveals that he then remembered and was fully conversant with the transactions and each of them. Notwithstanding this knowledge of the accusations and testimony against him, he offered no proof showing the proper expenditure of any part of said funds nor did he express

any regret for failure to return or promise to refund to any of the complainants the amount or any part of the amount he admittedly received as an attorney and converted to his own use. Common decency and the canons of ethics require professional honesty on the part of lawyers. The record before us shows, without the slightest effort at contradiction, that in each instance complained against the respondent he received money for a specific purpose. In none of the instances was the purpose for which the money was delivered to him accomplished, or the money ever returned to the one entitled thereto. We are convinced that the conclusions and recommendations of the commissioners are well founded. The rule is, therefore, made absolute, and respondent's name stricken from the roll of attorneys.

*Respondent disbarred.*