**UNITED STATES** of America ex rel. Charles **TOWNSEND**, Petitioner-Appellee,

v.

**Richard B. OGILVIE**, Sheriff of Cook County, and Jack Johnson, Warden of the Cook County Jail, Respondents-Appellants.

**No. 14519.**

United States Court of Appeals Seventh Circuit.

July 22, 1964.

838

Edward J. Hladis, Chief of Civil Division, Daniel P. Ward, State's Atty. of Cook County, Ill., Donald J. Veverka, Asst. State's Atty., Chicago, Ill., for respondents-appellants.

George N. Leighton, Chicago, Ill., for petitioner-appellee.

Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This case is again before us on appeal from the district court following remand by the United States Supreme Court in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), directing the district court to conduct an evidentiary hearing on petitioner's request for a writ of habeas corpus. Petitioner Charles Townsend claimed his confession of the murder of Jack Boone in 1953 was inadmissible in the state court because it was induced by the injection of drugs, thereby rendering the confession involuntary. The district judge, after conducting an evidentiary hearing, concluded the confession was voluntary and its admission in evidence was not violative of petitioner's constitutional rights; nevertheless, the judge granted the writ. It was his opinion that there was evidence, relating principally to the confession, which had not been considered by the jury in the state trial and which should be submitted to the jury upon a retrial. Respondents, the sheriff of Cook County, Illinois, and the warden of the county jail have appealed.

In 1955, petitioner was tried for the murder of Jack Boone before a jury in the criminal court of Cook County, Illinois. He had confessed to the commission of the crime. He objected to the introduction of his confession on the grounds that it was coerced. The trial judge denied his motion to suppress and admitted it into evidence. Petitioner was found guilty and sentenced to death. The Illinois supreme court affirmed the conviction, two justices dissenting. People v. Townsend, 11 Ill.2d 30, 141 N.E.2d 729, 69 A.L.R.2d 371 (1956). The United States Supreme Court denied certiorari. 355 U.S. 850, 78 S.Ct. 76, 2 L.Ed.2d 60 (1957). Petitioner then sought post-conviction relief in the state court; the Cook County criminal court dismissed his petition. The Illinois supreme court affirmed by order; the United States Supreme Court again denied certiorari. 358 U.S. 887, 79 S.Ct. 128, 3 L.Ed.2d 115 (1958).

Having exhausted his state remedies, Townsend petitioned for a writ of habeas corpus in the federal court. That court, considering only the pleadings and the Illinois supreme court opinion, denied the writ. This court dismissed the appeal. United States ex rel. Townsend v. Sain, 265 F.2d 660 (7th Cir. 1958). The Supreme Court granted certiorari, vacated the judgment of this court, and remanded for a decision by the district court whether a plenary hearing was required. 359 U.S. 64, 79 S.Ct. 655, 3 L.Ed.2d 634 (1958).

On remand the district court held a hearing in which only the record of the state court proceedings was considered and denied the writ. This court affirmed, United States ex rel. Townsend v. Sain, 276 F.2d 324 (7th Cir. 1960), saying that a district court's inquiry is limited in habeas corpus "to a study of the undisputed portions of the record." The United States Supreme Court again granted certiorari, 365 U.S. 866, 81 S. Ct. 907, 5 L.Ed.2d 859 (1961), and reversed this court, holding that "on this record the federal district judge was obliged

to hold a hearing." 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Although many of the facts are contained in the above cases, we do not think it amiss to summarize the facts heard both in the state court proceeding and in the hearing in the district court.

*The state court proceeding.*

On December 18, 1953, Boone left his home on the south side of Chicago for work at a steel mill when he was hit over the head with a brick and robbed of approximately four dollars. He died three days later.

Petitioner was arrested as a suspect in the early morning of January 1, 1954. He was then nineteen years old and a heroin addict since he was fifteen. He was questioned about various crimes. He denied any participation.

That evening during questioning, petitioner complained to the police that he had pains in his stomach and was suffering from other withdrawal symptoms; he wanted a doctor. One of the officers called a police physician. The doctor arrived at 9:45 p. m. He gave Townsend an injection of $\frac{1}{8}$-grain of phenobarbital and $\frac{1}{230}$-grain of hyoscine. Hyoscine is the same as scopolamine and is claimed by petitioner to be a truth serum. The doctor left petitioner four or five $\frac{1}{4}$-grain tablets of phenobarbital, two to be taken that evening and the remainder the following day.

The medication alleviated Townsend's discomfort. The events following the doctor's departure were disputed. However, both parties agreed that thereafter the police officers resumed their questioning of petitioner in the presence of the assistant state's attorney for about twenty-five minutes. Petitioner then confessed.

On the following day petitioner's statements were read back to him by the assistant state's attorney, and petitioner signed the confession. At the coroner's inquest on January 4, 1954, Townsend was called to the witness stand and, after being advised of his right not to testify, again confessed. At the time he was without counsel; the public defender was appointed after his arraignment.

Petitioner testified at the motion to suppress that he had been questioned in excess of two hours; that petitioner was in a "line-up" and although a robbery victim identified another as his assailant, the police told the victim he identified the wrong man; that he was beaten by a police officer; that he was told that a doctor would be called if he cooperated; and that one officer implied he thought petitioner innocent and that the doctor would give him a narcotic. He also testified that the doctor gave him an injection; thereafter, he took three pills; he felt dizzy and sleepy, his distance vision was impaired. He said that he confessed to the robbery and then he fell asleep, but was awakened, given a pen to sign his name to a document which he believed to be his release on bond; that the next day, although his head was clearer, he could not remember what had occurred that evening; that he was asked about a number of robberies and murders and said "yes" to them; that evening he took more phenobarbital pills and when he was half asleep he signed another paper; further, that he testified at the coroner's inquest because the officers had told him to do so.

The prosecution witnesses contradicted his testimony. They said that petitioner had been questioned initially for one-half hour, not two hours; that he had not taken the pills the doctor gave him on the night of January first; that he appeared to be awake and coherent at all times and understood the statements he signed. They denied threatening or beating Townsend or that he had been told to testify at the inquest.

Considerable testimony was presented about the probable effects of hyoscine and phenobarbital. Dr. Mansfield, the doctor who had given petitioner the injection, said that a therapeutic dose of hyoscine was $\frac{1}{100}$-grain; that he administered $\frac{1}{230}$-grain; and that phenobarbital combines well with hyoscine to quiet a person. He denied giving truth serum to petitioner. He did not say that

hyoscine is the same as scopolamine which is known as truth serum.

Dr. Proctor, testifying for petitioner, said that the effect of the prescribed dosage of hyoscine and phenobarbital could range from absolute sleep to disorientation and excitation, and if phenobarbital was taken orally at the same time, the depressive effect would be accentuated.

At the trial the issue of coercion was before the jury to test the credibility of the confession. At that time the identity of hyoscine and scopolamine was established, but again no mention was made that scopolamine was known as truth serum.

An expert witness testified that Townsend was a near mental deficient. Petitioner testified that the police officers had slapped him and threatened to shoot him. One officer testified Townsend confessed before the doctor gave him the drug. His testimony was unsubstantiated and even contradicted by another officer.

### The habeas corpus petition.

Petitioner's application for writ of habeas corpus was based on the allegation that his confession was involuntary because scopolamine (hyoscine) is a truth serum and this fact was not brought out in the state court proceedings; that hyoscine was not a proper medicine to give a drug addict because it affects the mind; that the police doctor willfully suppressed these facts and the identity of hyoscine and scopolamine; that the injection caused petitioner to confess to the murder of Boone as well as two other murders and two assaults and robberies.

### The evidentiary hearing.

At the hearing in the district court, counsel for petitioner maintained that the issue was whether Townsend's will was so overpowered by the injection of the drugs that he involuntarily confessed. The evidence submitted at the hearing was directed to that issue. Six witnesses testified for petitioner and two for respondents.

Petitioner's sister testified that she had brought petitioner from Mississippi to Chicago when he was about ten years old; that in 1947 she requested the school authorities give him a psychiatric examination but no examination was given; that petitioner's aunt and grandmother had been in a mental institution.

The assistant principal of an adjustment school testified that petitioner attended various schools for truants and malajusted children until he was released at the age of sixteen; that his mentality was borderline, having an intelligence quotient of 80.

Petitioner testified substantially the same as he did in the state proceedings. He testified that on January 1, 1954, after his apprehension, he was told, not asked, by a police officer that he had struck Boone with a brick; that he was then beaten by police officers; that after the doctor had given him the injection he was handed four pink capsules; that he took the pills and "lost his will to withstand police interrogation." He further testified that he talked to an attorney for the first time after he had been in jail for about two weeks; that he had made no request for an attorney before that time, but his request to see his sister shortly after arrest was denied and he was not permitted to speak to his family for a week.

Doctor Vitullo, the chief surgeon for the Chicago police department, testifying for petitioner, said Dr. Mansfield, who had administered the hyoscine, had been under his supervision; that the treatment given petitioner by Dr. Mansfield was in violation of administrative procedure because the doctors assigned to the police department were instructed not to give prisoners anything except aspirin, phenobarbital, gelusil, and coramine; that it is a policy that hypodermic needles are never used on prisoners. The doctor further testified that he would not have given hyoscine to a narcotic addict; that an injection of hyoscine, which is a narcotic, makes a person giddy, induces sleep, and the person is not

responsible for what he says; that a narcotic addict could be given three grains of hyoscine, depending upon his state of addiction, without adverse effect. He further testified that a person given $\frac{1}{230}$-grain of hyoscine and $\frac{1}{8}$-grain of phenobarbital would not be responsible and such a person would have a slurring of speech. Finally, he said he had never seen Townsend and did not know whether his answers would apply to him.

Dr. Proctor, a pharmacologist, who had testified for petitioner at the hearing on the motion to suppress and at the trial, testified again. His statement in the district court was substantially the same. He said that there is a relationship between the physical makeup of a person and his reaction to a normal dosage of hyoscine; that withdrawal symptoms resulting from heroin addiction could enhance the reaction to hyoscine; that hyoscine given an addict could impair his ability to reason; that the drug can affect that part of the brain associated with "will power"; and that a normal dosage of hyoscine would be $\frac{1}{200}$ to $\frac{1}{100}$ of a grain. In response to a hypothetical question, the witness said that it was his opinion that Townsend was under the influence of the injection at the time he confessed to the Boone murder.

Doctor Mansfield, who injected the drug, was called as a witness by petitioner. The doctor testified that after he had given Townsend the drug, he told the officers to let the petitioner rest because he had lost energy.

The assistant state's attorney who had taken the confession testified for respondents. His testimony was substantially the same as in the state proceedings. He said that Townsend at the time he confessed gave no indication that he was suffering from poor vision or was sleepy; that he used a normal conversational tone and seemed coherent. He also testified that he did not know what the doctor had administered and had no idea what the consequences of the injection were.

The other witness called by respondents was Dr. Muehlberger, a chemist and toxicologist, who testified as an expert. He said that scopolamine (hyoscine) is not a narcotic in the usual sense of the term; that he had experimented with this drug on a number of people; that from his experience a minimum of $\frac{1}{40}$-grain of the drug must be given before disorientation begins to set in and a confession can be induced. When asked a hypothetical question, the witness testified that a dose of $\frac{1}{230}$-grain of scopolamine given with $\frac{1}{8}$-grain of phenobarbital would not cause a person to confess. He further said that unless a person is unusually sensitive, $\frac{1}{230}$-grain of the drug would not affect him; that the only effect of the injection given Townsend was that it relieved the withdrawal symptoms. It was his opinion that the effect of the drug was inconsequential.

The district judge found that petitioner's confession was not induced by drugs or by narco-interrogation. He then made additional findings of allegedly evidentiary defects in the state trial. These included: when it was considering the confession, the jury did not know "that an injection of hyoscine and phenobarbital can produce a physiological and psychological condition adversely affecting the mind and will"; the jury was not fully informed about petitioner's personality, mental capacity, and educational background; the assistant state's attorney who took the confession did not know that petitioner had been given drugs, and the jury was unaware the attorney did not know petitioner had been given drugs; the jury was unaware that, within two hours after being injected with the drugs, petitioner had confessed to two other murders and two assaults and robberies; the jury did not know that petitioner had been indicted for three murders and for two robberies and that "the indictments for the murders of Johnson and Thompson and for the robberies of Anagnost and Martin were stricken with leave to reinstate after petitioner was found guilty of the murder of Jack Boone," or that petitioner "was

after indictment and trial by a jury * * * found not guilty of the murder of Johnny Stinson," or that Anagnost prior to petitioner's confession had identified "another man as the one who had robbed him."

The district judge concluded "there is new evidence * * * that warrants issuance of a writ of habeas corpus." He thereupon directed that a writ issue and the State of Illinois be granted leave to re-try petitioner within four months.

Throughout the entire habeas corpus proceeding, started in 1958, a single constitutional claim has been advanced. Petitioner has maintained consistently that his confession was involuntary because he did not have freedom of will; that he "was under the influence of phenobarbital and hyoscine, a drug synonymous and identical with scopolamine or 'the truth serum,' which drug was administered knowingly and purposefully by a police surgeon in the employ and control of the Police Department of the City of Chicago." Petitioner's claim was framed in these words by Mr. Chief Justice Warren in Townsend v. Sain, 372 U.S. 293, 307, 83 S.Ct. 745, 754 (1963): "[T]he heart of Townsend's claim is that his confession was inadmissible simply because it was caused by the injection of hyoscine." Petitioner's counsel in the district court reiterated that this was the sole issue.[1]

After a plenary hearing on the issue, the district judge concluded that the confession was voluntary and not drug-induced. The record supports the conclusion.[2]

The district judge, accordingly, resolved the sole constitutional claim that has been before the federal courts for six years, involving three hearings in the district court, two appeals in this court, and two reviews in the Supreme Court. The judge, however, found grounds other than those advanced by petitioner upon which to base the issuance of the writ. These grounds, relating to "new" evidence which the judge ruled should be submitted to another jury, have no relationship to constitutional rights. They are, therefore, not a proper basis for a habeas corpus action.

28 U.S.C. § 2241, which vests the federal courts with habeas corpus jurisdiction in cases involving prisoners in state custody, provides in part: "The writ of habeas corpus shall not extend to a prisoner unless * * * he is in custody in violation of the Constitution or laws or treaties of the United States." Thus the statute clearly limits federal jurisdiction over state prisoners to claims of deprivation of rights founded in federal law or the Constitution.

The Supreme Court made this clear in Townsend v. Sain, 372 U.S. 293, 311-12, 83 S.Ct. 745, 756 (1963), when it said, "The whole history of the writ * * * refutes a construction of the federal courts' habeas corpus powers that would assimilate their task to that of courts of appellate review." The Court said in the same vein, "State prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution."

This court expressed the same view in United States ex rel. Sproch v. Ragen, 246 F.2d 264, 265 (7th Cir. 1957). There we said, "[A]n application for habeas corpus may not be successfully employed in lieu of appeal or appropriate review by writ of error. * * * [A] state prisoner cannot properly invoke the writ unless it appears that he is in custody in

---

1. During the hearing, counsel for petitioner said:
   "You see, your honor, we have here a very narrow question: Was this man's will so torn down by this injection of the drug that he gave an involuntary confession used against him in the state court prosecution. That is the question before you."

2. Petitioner by failing to cross appeal presents no issue which challenges the correctness of the district judge's conclusion. Tallman v. Udall, 116 U.S.App.D.C. 379, 324 F.2d 411 (1963) (concurring opinion).

violation of the Constitution of the United States."

■ Accordingly, we hold, without resolving the merits of the nonfederal grounds upon which the writ was issued, that the district court in issuing the writ abused its statutory powers. Were we, however, to consider the merits of these grounds, we are of the opinion that none of them, upon analysis, would constitute a sound basis for the granting of a new trial.

■■ Facts relating to the confession which could properly have been brought before the jury on the question of credibility, if not suppressed, can have no possible constitutional significance. The law of Illinois is settled that the trial judge decides whether the confession was voluntarily given or coerced; in short, he determines its admissibility. The jury's function is limited to a consideration of whether the confession, after its admission, is true or false, that is, it decides the credibility of the confession. In that connection the jury may consider facts and circumstances surrounding its extraction. People v. Schwartz, 3 Ill.2d 520, 121 N.E.2d 758 (1954); People v. Roach, 369 Ill. 95, 15 N.E.2d 873 (1938); People v. Fox, 319 Ill. 606, 150 N.E. 347 (1926). When the facts and circumstances were available to the defense at the trial, as here, failure of a defendant to bring them to the jury's attention is a mere tactical mistake on his part that does not give rise to a constitutional claim cognizable in a habeas corpus proceeding.

It should be emphasized that petitioner did not contend and the district court did not find that the additional evidence, specified as the basis for a new trial, was suppressed by the state. The record is devoid of any showing of suppression. Consequently, no federal issue was involved.

We thus limit our discussion to the evidentiary matters upon which the issuance of the writ was based. Were we to utilize as an alternative basis for our decision the resolution of whether these evidentiary matters should or could have been submitted to the jury, we would be committing the same error we think is chargeable to the district judge—assuming appellate jurisdiction over a state judicial proceeding.

One contention, however, needs comment. Petitioner now says that after having been arrested on January 1, 1954, he was not afforded the opportunity of consulting with counsel for a period of two weeks; that he was deprived of the benefit of counsel and, therefore, due process during the period of interrogation when his confession was given. The issue was never raised prior to this appeal. The record indicates that counsel for petitioner assured the district court that evidence of lack of counsel was being introduced only as it applied to the issue of the voluntariness of the confession.[3]

■ Because of the holding in Escobedo v. Illinois, 84 S.Ct. 1758 (1964), decided June 22, 1964, we, nevertheless, have examined petitioner's contention and believe it has no merit. The record shows that petitioner admitted he never asked for an attorney; furthermore, that at the time of his appearance before the coroner three days after he had confessed, he again admitted the commission of the Boone murder. Prior to this admission the coroner informed him that he need not testify.

■ Finally, we conclude a federal court has exhausted its statutory power in a habeas corpus proceeding after it has decided a confession, introduced in a state criminal trial, was voluntarily given. The court does not possess a residuum of power to search the record for procedural errors not involving constitu-

3.  Townsend v. Sain, 372 U.S. U.S. 293, 308, 83 S.Ct. 745, 754 (1963), the Court said: "[T]here are many relevant circumstances in this case which a district judge would be required to consider in determining whether the injection of scopolamine caused Townsend to confess. Among these are his lack of counsel at the time, his drug addiction, the fact that he was a 'near mental defective,' and his youth and inexperience."

tional rights and issue a writ of habeas corpus for the purpose of providing a new trial in the state court.

A federal court acting in this fashion would constitute a super appellate tribunal and encroach upon state appellate court prerogatives; such action would affront the principles of federalism upon which our federal-state juridic system operates.

The order of the district court is reversed, and the cause is remanded with direction to dismiss the petition.