UNITED STATES ex rel. Theodore ROB-
INSON, Petitioner-Appellant,

v.

Frank J. PATE, Warden, Respondent-
Appellee.

No. 14253.

United States Court of Appeals
Seventh Circuit.

May 3, 1965.

Knoch, Circuit Judge, dissented.

Theodore Robinson, John C. Tucker,
Chicago, Ill., for appellant.

William G. Clark, Atty. Gen., of Illi-
nois, Edward A. Berman, Asst. Atty.
Gen., Chicago, Ill., Richard A. Michael,

Asst. Attys. Gen., of counsel, for appellee.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

KILEY, Circuit Judge.

The district court denied, without hearing evidence, Robinson's petition under the Habeas Corpus Act, 28 U.S.C. §§ 2241–2254, to vacate his state conviction for murder and his life sentence. He has appealed, represented by counsel appointed by this court. We reverse and remand.

The district court in denying the petition relied upon the record and transcript of the murder trial without a jury in the Criminal Court of Cook County in 1959, and the opinion of the Supreme Court of Illinois in People v. Robinson, 22 Ill.2d 162, 174 N.E.2d 820, cert. denied 368 U. S. 857, 82 S.Ct. 97, 7 L.Ed.2d 55 (1961).

Robinson's petition alleges that he was denied due process of law under the Fourteenth Amendment at his bench trial by the State's failure to prove beyond a reasonable doubt his sanity at the time of the alleged murder, by the trial court's failure to conduct on its own motion a hearing into his competence to stand trial, and by the court's denial of his Sixth Amendment right to compulsory process.[1]

Robinson contends on this appeal that the district court erred in failing to require respondent to file a return to his petition, in refusing to appoint counsel for him, and in failing to hold an "evidentiary hearing" in accordance with the rules in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1962).

We recognize the severe pressure upon the state criminal trial courts to dispose of cases with dispatch in order to maintain a reasonable currency between indictment and trial. This salutary goal, however, must not be reached at the expense of constitutional rights. Robinson's trial was conducted under an undue preoccupation with hurried disposition in an atmosphere charged with haste, hardly consistent with the gravity of a capital case and protection of the right to due process.[2] One result of the un-

1. Judges Schnackenberg and Knoch do not concur in that portion of this opinion, beginning at p. 696, dealing with the Sixth Amendment question. See the specially concurring opinion of Judge Schnackenberg, infra, p. 698 and the dissenting opinion of Judge Knoch, infra, p. 698.

2. The following statements are taken from the transcript of the second day of the trial, commencing with the presentation of the case for the defendant late in the morning session. Number references are to the page in the transcript.

"(207) THE COURT: Let's proceed, please. We have wasted fifteen minutes. We have thousands of indictments waiting for trial. I can't waste fifteen minutes waiting for defense counsel. Let's move.

"(208) MR. McDERMID: May I have one minute to satisfy—

"THE COURT: We have wasted eighteen minutes. You must prepare your lawsuit before you come to court. We have been on trial now for a whole day and a half and you have had ample time to talk to your client. Go ahead, talk to him now.

"(209) THE DEFENDANT: I would like that the court be adjourned until tomorrow morning.

"THE COURT: No, sir.

"THE DEFENDANT: To give me time to confer with counsel for the calling of witnesses.

"THE COURT: No, sir. We have been waiting here since 11:00 o'clock waiting for your lawyer. It is now 11:30. We have been on trial a day and a half.

"(246) THE COURT: All right. Call your next witness. I understand that the lady is here now, Helen Calhoun. Helen Calhoun is here. Let's move along a little faster, please.

"(259) THE COURT: Are you going to be with this witness much longer? We are well into the lunch hour.

(273) [immediately following the conclusion of the final argument for the defendant:]

"THE COURT: Very well. All right, bring up the defendant, please.

"The defendant is found guilty of the crime of murder. He is sentenced to the State Penitentiary for a term of his natural life. Take him away.

"THE DEFENDANT: Judge, your Honor, may I say something before you

usual haste was denial to Robinson, an indigent represented by court-appointed counsel and obviously without funds to pay for expert psychiatric testimony, of a fair opportunity to obtain volunteer expert testimony from a public agency. We shall consider this result later in the opinion.

The conviction by a state court of a person for an alleged crime committed while insane violates due process under the Fourteenth Amendment. United States ex rel. Smith v. Baldi, 344 U.S. 561, 570, 73 S.Ct. 391, 97 L.Ed. 549 (1952) (Frankfurter, J., dissenting); People v. Robinson, 22 Ill.2d 162, 174 N. E.2d 820 (1961). And while the State must prove the sanity of the defendant at the time of the alleged crime, that burden is satisfied in Illinois by the presumption of sanity until the introduction of evidence sufficient to raise a reasonable doubt of the defendant's sanity, at which time the necessity of affirmative proof of sanity beyond a reasonable doubt becomes the burden of the State. People v. Skeoch, 408 Ill. 276, 280, 96 N.E.2d 473 (1951); People v. Patlak, 363 Ill. 40, 1 N.E.2d 228 (1936).

Robinson's defense to the indictment was insanity at the time of the alleged murder. He contends that he was insane at the time of the trial also, or that at least there was a bona fide doubt of his sanity raised so that the trial judge on his own motion should have impanelled a jury and conducted a sanity hearing pursuant to the then 38 Ill.Rev.Stat. §§ 592–593 (1963).[3]

Robinson did not testify. The defense presented four relatives and friends as lay witnesses and the stipulated testimony of a police officer on the question of his sanity. Each witness stated his opinion that Robinson was insane and did not know the difference between right and wrong.

The testimony showed a continuing history of erratic and violent behavior by Robinson from the time he was struck on the head by a falling brick as a child until the unusual circumstances of the fatal shooting and his arrest. Incidents related included a commitment for a short time to a state mental hospital in 1951, from which he was released at his wife's request, the killing of his eighteen month old baby[4] and his contemporaneous attempted suicide, an attempt to burn his wife's clothes, and his mother's attempts to have him recommitted within a year before the alleged murder.

Robinson's behavior in the shooting and his subsequent arrest was also erratic. Flossie Mae Ward, the victim, a woman with whom Robinson had been living, worked at the restaurant where the shooting occurred. Robinson entered the restaurant carrying a gun which he pointed at Mrs. Ward, within a distance of five feet or less, without saying a word. Upon seeing him she said, "Ted, don't start nothing tonight," and went back to her work. Robinson then moved quickly to the back of the room, a distance of twenty feet or more, and jumped over the counter; as a result, two other employees were placed between him and Mrs. Ward. He rushed past them and fired one or more shots at the victim. Both Robinson and Mrs. Ward then jumped over the counter and ran out the door onto the sidewalk, where her body was found.

take me out of your courtroom?
"THE COURT: Yes, sir.
[The defendant then protested against failure of his counsel to call certain witnesses.]
"THE COURT: The Court is satisfied beyond a reasonable doubt—
"THE DEFENDANT: Still and all, may I still say something?
"THE COURT: (Continuing)—that you killed this woman. Whether those were your clothes or not your clothes,

it doesn't make any difference. Take him away. Call the next case."

3. People v. Burson, 11 Ill.2d 360, 368, 370, 143 N.E.2d 239 (1957); Brown v. People, 8 Ill.2d 540, 134 N.E.2d 760 (1956).

4. This incident occurred in 1953. The record is unclear on this point, but it appears that Robinson served a sentence of only three years after being convicted of shooting the baby.

The evening following the shooting, Robert Moore told the police that Robinson was at Moore's apartment. When officers in uniform arrived on the floor of the apartment, Robinson was standing in the hall near the elevator. The officers went by him, talked to Mr. and Mrs. Moore in Robinson's view, with guns drawn, and being informed that Robinson had just left, went back down the hall and asked Robinson to identify himself. He did. Robinson had remained where he was, even though he could have entered the elevator without passing the policemen while they talked to the Moores.

The shooting occurred, and the trial was held, in 1959. The State introduced the record of Robinson's discharge from a mental hospital in 1951, a stipulation of an adjudication in 1953 that he was sane, and a stipulation that the director of the court's Behavior Clinic would, if called, testify, on the basis of an examination two months before trial, that Robinson was able then to understand the charge against him and to cooperate with his counsel.

The morning of the second day of the trial the court was told by Robinson's attorney that they had hoped to have a doctor from the Psychiatric Institute testify that afternoon but had been unable to reach him. He said they were sure the doctor could be called the next morning, but the court, when no assurance was given that the doctor had been subpoenaed, refused to continue the case until the next morning in order to hear the doctor's testimony.[5] The trial concluded that afternoon without the doctor's testimony and without an expert witness called for or against Robinson.

After the verdict and sentence to life imprisonment, one of Robinson's attorneys stated that he had made two or three dozen calls to psychiatrists, that he had contacted the Illinois Psychiatric Society and its officers, and that he had asked a private psychiatrist for assistance—all to no avail. He stated that he did not believe in subpoenaing a psychiatrist to testify when he did not know if the particular doctor would be cooperative.

█ The trial court made no express finding that Robinson was sane at the time of the alleged murder, but that finding is implicit in the judgment of guilt. The Illinois Supreme Court on appeal held, however, that the evidence at the trial failed to raise a reasonable doubt as to Robinson's sanity, since most of the incidents related by the witnesses occurred several years prior to the fatal shooting and there was no evidence that Robinson's mental illness was "of a permanent and continuing nature." People v. Robinson, 22 Ill.2d 162, 169, 174 N.E. 2d 820, 823 (1961).

But that court, in its opinion, made no mention of the hasty trial of this capital charge with the denial of a reasonable opportunity to Robinson to obtain psychiatric testimony which could have had substantial bearing upon the very question of Robinson's "permanent and continuing" mental state. Presumably the Illinois Supreme Court saw little importance in the testimony of Robinson's mother of her unsuccessful attempts to have the police arrest her son so that he could be confined in 1958, or in the testimony concerning Robinson's eccentric behavior in committing the alleged murder. The mother's attempt to have Robinson committed the year before that homicide and his odd antics in the homicide were five and six years after the adjudication of sanity. Finally, although the Illinois Supreme Court did consider the claim of Robinson that he was denied the right to compulsory process to obtain as witness-

5. "THE COURT: Did you subpoena him? "MR. McDERMID: I understand that it was done but I am not really sure. "THE COURT: If you subpoenaed him, I will issue an attachment. If you did not subpoena him, we cannot delay the trial. You must prepare your law suit before you go to trial. You are on trial now for two days. Other cases are waiting. We have to proceed. If you subpoenaed him, prepare a petition and I will send for him. If you did not subpoena him it is unfortunate.

es Mr. and Mrs. Moore, outside of whose apartment Robinson was arrested the day after the homicide, the court, among other things, stated that no showing had been made that the witnesses sought were material. It could be that their observation of Robinson the day following the homicide was material to the question of his insanity the previous night.

We turn now to the question of Robinson's competency to stand trial.

Due process requires that a person be not convicted of a crime while he is insane. People v. Robinson, 22 Ill. 2d 162, 174 N.E.2d 820 (1961). And the denial of a reasonable request to obtain the services of a necessary psychiatric witness is effectually a suppression of evidence violating the fundamental right of due process. See United States ex rel. Townsend v. Ogilvie, 334 F.2d 837, 843 (7th Cir. 1964). Neither Robinson nor his attorneys moved for an inquiry into defendant's sanity at the time of trial. In Illinois, however, the trial judge is required, whenever a bona fide doubt is raised as to the defendant's sanity at the time of the trial, to impanel a jury and conduct a sanity hearing. People v. Lego, 32 Ill.2d 76, 203 N.E.2d 875 (1965); People v. Robinson, 22 Ill.2d p. 167, 174 N.E.2d 820. This procedure satisfies the requirement of due process; to deny the established procedure to a particular accused, however, is a denial of due process. Thomas v. Cunningham, 313 F.2d 934, 938 (4th Cir. 1963).

As we have indicated, Robinson did not testify in his behalf, and the testimony with respect to his sanity came from relatives and friends. The opinion of these witnesses was that Robinson did not know the difference between right and wrong. We have discussed at length their testimony hereinabove. The only evidence introduced for the prosecution specifically on the question of Robinson's competency to stand trial was a stipulation at the end of Robinson's case that if called, Dr. Haines, the director of the Behavior Clinic of the Criminal Court of Cook County, would testify that he examined Robinson about two months prior to trial and that in his opinion Robinson was at that time able to understand the nature of the charges against him and to cooperate with counsel. The Assistant State's Attorney sought a broader stipulation from defense counsel. Failing in this, he told the court,

"Now the defense raised here is such that I think we should have Dr. Haines' testimony as to his opinion whether this man is sane or insane. It is possible that the man might be insane and know the nature of the charge or be able to cooperate with his counsel. I think it should be in evidence, your honor, that Dr. Haines' opinion is this defendant was sane when he was examined."

The trial court stated that the doctor's testimony was not needed, since there was already enough in the record.

There was no express finding by the trial court that defendant was competent to stand trial. There is only our inference, of that finding, drawable from the judgment of guilt and from the trial court's statement referring to the State's Attorney's suggestion that the director of the Behavior Clinic should be called as a witness, that "You have enough in the record now. I don't think you need Dr. Haines."

Denial of a reasonable opportunity to obtain psychiatric testimony for Robinson could also have weighed heavily on the question of his competency to stand trial. The case closed with no psychiatric witness called to give testimony either on the defense of insanity or on Robinson's competence to stand trial. We have pointed out that denial of a fair opportunity to obtain necessary testimony is effectually to suppress it. See United States ex rel. Townsend v. Ogilvie, 334 F. 2d 837, 843 (7th Cir. 1964). The Illinois Supreme Court thought no facts were brought to the trial court's attention to raise a doubt of defendant's sanity requiring an inquiry; that the "traits, conduct and crimes" of Robinson were not proved to be "true manifestations of insanity"; that the conclusions of the defense witnesses were based on incidents

many years before the trial, having little relevancy at the time of trial; that the court was aware of Robinson's confinement eight years earlier, and of the records of his condition and discharge and of his adjudication of sanity six years before the trial; and that the court had before it the stipulation concerning Dr. Haines, the director of the Behavior Clinic, as well as Robinson's display at the trial of his ability to rationally assist in the conduct of his defense.

We point out again that the only likely means Robinson had to prove that his "traits, conduct and crimes" were "true manifestations" of insanity was the psychiatric testimony he was denied a reasonable opportunity to obtain; and again we note his mother's testimony of her unsuccessful attempt in 1958 to have the police arrest her son for confinement because of his irrational conduct at the time and the testimony of his erratic conduct in committing the homicide, both of which events occurred after the adjudication of sanity.

We are mindful of the admonitions to district courts in Townsend v. Sain, 372 U.S. at 318, 83 S.Ct. at 760, with respect to "their delicate role in the maintenance of proper federal-state relations." But the district court is reminded in Townsend of its power to "try the facts anew," 372 U.S. at 312, 83 S. Ct. 745, where an applicant in habeas alleges facts which, if proved, would entitle him to relief, and of the duty to exercise that power in a federal evidentiary hearing "unless the state-court trier of fact has after a full hearing reliably found the relevant facts." 372 U.S. at 313, 83 S.Ct. at 757.

Robinson's petition, and the record, present a substantial question of denial of his Sixth Amendment right to compulsory process [6] for witnesses in his behalf. At the commencement of the defendant's case Robinson protested that his attorneys had failed to subpoena two witnesses as he had instructed them. One of the attorneys stated to the court that he did not remember any such instruction. When Robinson was asked what the witnesses would testify to he replied that he did not know, but that he wanted them subpoenaed. The court stated that "We can't subpoena people unless you tell us what they are going to testify to."

The witnesses Robinson wanted called were Mr. and Mrs. Robert Moore. Prior testimony had disclosed that Robinson was present in their apartment the day after the shooting and that they had caused, and witnessed, his arrest. Hearsay testimony of their statements at the time of the arrest had been admitted into evidence without objection.

Following the announcement of the verdict and sentence, one of Robinson's attorneys stated that following Robinson's request during the trial for subpoenas he had talked to the Moores and determined that their testimony would not be helpful. He stated that Robinson was told of this and agreed that they should not be called.

In the wake of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), holding that the Sixth Amendment right to counsel is embraced in the Fourteenth Amendment to protect that right against state action,[7] it follows that the right of compulsory process

---

6. U.S.Const. amend. VI.
   "In all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining Witnesses in his favor * * *."

7. Since this opinion was submitted the Supreme Court has decided in Pointer v. State of Texas, 85 S.Ct. 1065 (April 5, 1965) that a defendant's Six Amendment right to be confronted with the witnesses against him, and to cross-examine them,

is applicable to the states by virtue of the Fourteenth Amendment. ("We hold today that the Sixth Amendment's right of an accused to confront the witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment.") There is good reason to anticipate that before long the right to compulsory process for obtaining witnesses in his favor will likewise be made applicable to the states by the Supreme Court.

must similarly be included in the Fourteenth Amendment protection.[8] This right is as "implicit in the concept of ordered liberty"[9] as the right to counsel. In many cases unless a defendant had the opportunity to compel witnesses to appear in his behalf, the right to counsel would be meaningless. Unreasonable denial of a continuance to afford the defendant a timely opportunity to obtain witnesses by compulsory process was held to be a violation of this constitutional right in Paoni v. United States, 281 F. 801 (3rd Cir. 1922). And this basic right to process can be understandingly waived only by a defendant, not by his attorney. Cf. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

If, as alleged by Robinson, he immediately upon learning that his attorneys had failed to subpoena Mr. and Mrs. Moore as he had instructed them, requested that they be subpoenaed, and if he did not later understandingly abandon his desire to have them called, then his constitutional right was violated. It was not necessary for him, as the state court seems to have thought, as a prerequisite to the exercise of this right to be able to tell the court what testimony he expected from the witnesses. Without any specification by Robinson, the relationship of the Moores to the case should have been apparent from the testimony concerning Robinson's arrest. They saw Robinson the day after the homicide and could have given testimony of their observation of him, on the question of his insanity at the time.

A review of the record of the state trial persuades us that Robinson was convicted of murder and sentenced to life imprisonment in an unduly hurried trial without a fair opportunity to obtain necessary expert psychiatric testimony in his behalf, without sufficient development of facts on the issues of insanity at the time of the homicide and at the trial, and upon a record which does not show that the state court "after a full hearing reliably found the relevant facts."

■■■ We think our consideration and disposition of the foregoing questions compel the conclusion that the district court erred in not requiring a return to be filed by respondent to Robinson's petition. Under the mandatory provisions of 28 U.S.C. § 2243 [10] a return is required unless the petition is patently frivolous or obviously without merit. Brooks v. Anderson, 115 U.S.App.D.C. 116, 317 F.2d 179 (1963); Higgins v. Steele, 195 F.2d 366 (8th Cir. 1952). We hold that an evidentiary hearing was mandatory. The cause will be remanded for that purpose.

The cause is remanded to the district court with directions to appoint counsel for Robinson; to require the respondent to file a return; to proceed with a determination of the question whether, when Robinson committed the alleged murder in 1959, he was sane; and to provide a fair opportunity for appointed counsel— with whatever aid the district court can provide him—to obtain expert witnesses to testify on the question. If Robinson is found by the court to have been insane at the time in question he should be ordered released from custody of the respondent; such release should, however, be delayed for a reasonable time to be set by the district court for an opportunity by the

---

8. See MacKenna v. Ellis, 263 F.2d 35 (5th Cir.), cert. denied 360 U.S. 935, 79 S.Ct. 1453, 3 L.Ed.2d 1546 (1959); MacKenna v. Ellis, 280 F.2d 592 (5th Cir. 1960), modified on rehearing en banc 289 F.2d 928 (5th Cir.), cert. denied 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961).

9. Palko v. State of Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937).

10. "A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."

appropriate State authorities to examine into Robinson's present mental health.

The district court should also determine upon the hearing whether Robinson was denied due process by reason of failure of the trial court on its own motion to impanel a jury and conduct a sanity hearing upon his competence to stand trial. If the court finds that Robinson's federal constitutional rights were violated in that respect, he should be ordered released, but such release may be delayed for a reasonable time to be set by the district court to permit the State of Illinois to grant Robinson a new trial.

Mr. John C. Tucker, of Chicago, Illinois, was appointed by this court to represent petitioner on this appeal. We thank him for his able and devoted efforts on behalf of his client.

SCHNACKENBERG, Circuit Judge (specially concurring).

I approve and concur in Judge Kiley's opinion, with the exception of that part dealing with Robinson's right to compulsory process for witnesses in his behalf, based on the Sixth Amendment. I believe that the supposed difference of opinion between Robinson and his attorneys as to whether these witnesses should be called or not, does not afford a basis for a charge of a violation of his constitutional rights.

KNOCH, Circuit Judge (dissenting).

Regretfully, I find myself in disagreement with the opinion of the majority.

As the Illinois Supreme Court noted in its opinion on defendant's writ of error proceeding, neither defendant nor his counsel requested a sanity hearing. Granted that it was the duty of the Trial Judge to impanel a jury to determine the issue if the facts brought to the Court's attention or the personal observations of the Trial Judge raised a bona fide doubt of defendant's sanity. Here the Trial Judge, who was advised of the facts of the defendant's past medical history, had more than the usual opportunity to evaluate the defendant's demeanor in Court because of the several colloquys between the defendant and the Judge. Manifestly the Trial Judge experienced no bona fide doubt as to defendant's sanity. Lacking his unique advantages for such observation, it seems to me somewhat presumptuous for this Court, or the District Court, to say that he ought to have entertained such doubts.

As to denial of continuance to subpoena two additional witnesses, whom defendant's counsel had not seen fit to call, it seems only fair to me that the Trial Court be given some inkling of the nature of their anticipated testimony to justify the continuance sought mid trial.

I would affirm the decision of the District Court. In my opinion the Illinois Supreme Court has adequately dealt with the issue raised here and its decision should not be disturbed.