**UNITED STATES ex rel. Frank T. NETTERS**

v.

**Alfred T. RUNDLE.**

**Misc. No. 3055.**

United States District Court E. D. Pennsylvania.

Oct. 7, 1965.

Richard H. Knox, Philadelphia, Pa., for petitioner.

James E. O'Brien, Asst. Dist. Atty. of Lackawanna County, Kennedy, O'Brien & O'Brien, Scranton, Pa., for respondent.

DAVIS, District Judge.

The relator was convicted in 1947 of five counts of burglary in the Court of Oyer and Terminer and General Jail Delivery of Lackawanna County, Pennsylvania and was sentenced to consecutive terms of four to eight years for each. Having exhausted his state remedies pursuant to 28 U.S.C. § 2254, he now petitions this court for a Writ of Habeas Corpus.

The relator was arrested either late on a Friday night or early on a Saturday morning in May of 1947 while committing a burglary in an apartment in the City of Scranton. He was taken to the city jail where two detectives proceeded to interrogate him for several hours on Saturday morning. The relator contends that the police asked him why he was in Scranton, and he replied that he had quit

his job in Syracuse, New York and had come to Scranton in order to avoid a deportation warrant that was outstanding against him. The police, according to the relator, then began to accuse him of other burglaries that had occurred in the city. At first, he denied any knowledge of them. The two detectives, however, decided to take him for a ride in their automobile to look at some of the homes that had recently been burglarized. After he made further denials of any involvement, the detectives told him repeatedly that he could get twenty to forty years for "one job" and that the warrant to deport him to Poland was "just as good as a death warrant." Finally, he admitted to four other burglaries while alone with the police but whenever taken in front of civilians at these various places he denied his guilt. Subsequently, he was returned to the city jail where one of the detectives warned him, "You better get wise and cooperate or you are going to get hurt." In order to remove the pressure, the relator promised to give the detectives a statement on Sunday which was the following day. On that day, the two detectives took him to the women's section of the jail where no one was present except the matron who left on the orders of the two officers. They then pressed for a written statement, but petitioner at that point requested a lawyer. They retorted that he had no rights since he was an alien. The officers were becoming more and more hostile when a third officer rushed in to report that the detectives were needed to investigate another burglary that had just occurred. They returned the relator to his cell and did not see him again until he was taken before a magistrate for a preliminary hearing on Monday morning. At no time during these several days of police questioning was petitioner allowed to see an attorney or told of his right to remain silent.

At both the arraignment and trial, the relator pleaded not guilty to all the burglary charges except the one for which he was originally arrested. The only evidence introduced against him as to the ones he denied having committed was his oral confession. The occupants of the burglarized homes testified only to the fact that the burglaries had occurred, but none identified the relator.

At the habeas corpus hearing before this court, the relator's attorney at the trial in 1947 was called as a witness. While finding it difficult to recall events that had occurred eighteen years before, he did recollect the relator's complaints to him about abusive treatment when he was first arrested although the attorney thought that the relator had referred to physical rather than psychological abuse.

█ No evidence was presented at the hearing to refute the fact that coercion had occurred or to show that the relator was afforded the right to counsel or informed of his right to remain silent during police interrogation. Of the two detectives involved in the questioning in 1947, one is now dead, and the other, retired from the force, was unable to appear due to poor health. Under the circumstances and after carefully weighing the relator's and his former attorney's testimony, the court feels constrained to accept the relator's factual allegations as true.

The relator contends that he was denied his constitutional right to the assistance of counsel and that he was not informed during the police interrogation of his right against self-incrimination. Due to the disposition of these questions it will be unnecessary to discuss relator's allegations that his counsel was incompetent, that the trial judge committed fundamental error in the charge to the jury, and that he was subject to psychological pressure and threats which resulted in a coerced confession.

The Supreme Court has passed on the matter of a prisoner's rights during police interrogation in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). There, the defendant, a 22-year-old of Mexican extraction, had been arrested and questioned about the fatal shooting of his brother-in-law. During the interrogation, the prisoner again and again requested to speak to

his lawyer, but the police stated that his lawyer "didn't want to see him". In fact, his attorney made consistent efforts to see him at the Homicide Bureau where the defendant was being held, but the officials in charge refused the attorney permission to see his client until they had finished questioning him. The question presented was whether the defendant had been denied the assistance of counsel in derogation of the Sixth and Fourteenth Amendments, thus rendering inadmissible "any incriminating statement elicited by the police during the interrogation". The court held:

"* * * where as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied the 'Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainright, 372 U.S. [335], at 342, [83 S.Ct. 792, 9 L.Ed.2d 799] and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

While a few federal courts have narrowly construed this holding as applying only to prisoners who in fact have requested counsel, see United States ex rel. Townsend v. Ogilvie, 334 F.2d 837 (7th Cir. 1964) cert. denied, 379 U.S. 984, 85 S.Ct. 683, 13 L.Ed.2d 574 (1965); Mitchell v. Stephens, 232 F.Supp. 497 (E.D. Ark.1964), most of the federal courts that have passed on the question, including the courts of this Circuit and this District, have held that an actual request for counsel is immaterial, United States ex rel. Russo v. State of New Jersey, 351

F.2d 429 (3d Cir. 1965); United States ex rel. Stovall v. Denno (2d Cir. 1965) (dictum); Wright v. Dickson, 336 F.2d 878 (9th Cir. 1964); United States ex rel. Rivers v. Myers, 240 F.Supp. 39 (E.D.Pa.1965); United States ex rel. Dickerson v. Rundle, 238 F.Supp. 218 (E.D.Pa.1965); Galarza Cruz v. Delgado, 233 F.Supp. 944 (D.P.R.1964). The rationale of the "majority view" is the well reasoned assertion that the Constitution protects not only those who are sufficiently versed in the law to make the talismanic request for counsel but also those who are ignorant and weak and who do not know enough to make such a request. Indeed those who do not ask for an attorney probably have a greater need for legal counsel than those who know enough to speak up for protection.

■ In the present case, the relator asked for counsel after he had made his oral confession while in Escobedo the defendant requested counsel repeatedly and apparently before he made his incriminating statements. In any event under United States ex rel. Russo v. State of New Jersey, 351 F.2d 429 (3d Cir. 1965), this circuit has firmly established that the right to counsel during police interrogation does not in any way depend on a request for a lawyer, so that even if he had failed to make known a desire for counsel, it would have been of no constitutional significance.

There is no real question that the police had reached the accusatory stage with the relator and had focused on him as the perpetrator of a number of burglaries in the City of Scranton when he made his incriminating admissions. They not only questioned him in secret for a couple of hours at a time over a two day period at the City Jail but also took him to the sites of various burglaries. In addition, there is no evidence that the officers warned him of his right against self incrimination or his right to counsel; on the contrary, they announced that because he was not a citizen of the United States, he had no rights at all and could receive 20 to 40 years in prison for a

burglary when actually the penalty in Pennsylvania may not exceed 20 years.[1] This process certainly "lends itself to eliciting incriminating statements." Escobedo v. State of Illinois, 378 U.S. 478, 491, 84 S.Ct. 1758, 1765, 12 L.Ed.2d 977 (1964).

 Since the relator did not have an attorney during this intensive and extensive police interrogation, his right to the assistance of counsel under the Sixth and Fourteenth Amendments of the Constitution was denied and consequently the oral confessions elicited from him during such interrogation were inadmissible at trial.

1. Pa.Stat.Ann. Tit. 18 § 4901 (1963).