Robert L. KAULAITY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–694.

Court of Criminal Appeals of Oklahoma.

May 19, 1975.

Robert L. Kaulaity was convicted for the crime of Murder in the Second Degree, was sentenced to a term of ten years to life imprisonment, and appeals. Judgment and sentence affirmed.

Justus W. Hefley, Hefley & Davis, Anadarko, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., David O'Brien, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, Robert L. Kaulaity, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Caddo County, Case No. CRF–73–109, for the crime of Murder in the Second Degree, in violation of 21 O.S.Supp.1973, § 701.2. His punishment was assessed at ten (10) years to life imprisonment in the custody of the State Department of Corrections, and from said judgment and sentence, a timely appeal has been perfected to this Court.

The findings of the evidentiary hearing as to the sanity of the defendant were such that the trial court ordered a jury trial to be held pursuant to 22 O.S.1971, § 1162, on April 8, 1974. The jury returned the verdict that defendant was presently sane and mentally competent to make a rational presentation and to aid in his defense. Trial was set for April 9, 1974.

During the murder trial, defendant's sister and brother-in-law both testified that on December 8, 1973, the defendant and his wife came to their house, whereupon defendant and his wife told them that they had killed Domebo. Defendant and his wife directed defendant's sister and her husband to the location where the deceased was shot. They helped defendant and his wife put deceased into defendant's sister's car and took him to the hospital. Austin Domebo died shortly thereafter. In the opinion of Dr. Richard Boatman of the State Medical Examiner's Office, the cause of death was a gunshot wound to the head.

The gun offered into evidence by the State was identified by the defendant's father as one he had sold his son. As to these allegations of fact, there was no controversy.

The defense then proceeded to present its case. The first and only witness called was Dr. A. C. Roberson. Dr. Roberson testified that he was a physician residing in Anadarko, Oklahoma, and he had served on the sanity commission of Caddo County numerous times during his sixteen years of practice. Further, Dr. Roberson testified he had attended the defendant since defendant was a small child, and for about a year since his return from Vietnam, due to an emotional breakdown. During that year, the physician testified defendant had an episode of irrational behavior (Tr. 201). Prior to December 8, 1973, the date of the alleged crime, and thereafter, the defendant had demonstrated this same behavioral pattern, according to the testimony of Dr. Roberson. His opinion as to whether defendant could have been sane or insane on the date of the crime was that "it could have been either way."

On cross-examination, Dr. Roberson testified he was not a psychiatrist, nor had he given defendant any psychiatric tests. Upon re-direct, Dr. Roberson stated he based his opinion upon his years of practice of medicine. Dr. Roberson further testified that defendant had been confined in the psychiatric ward in Sam Houston after his return from Vietnam, and had been on out-patient care approximately five or six years. The defense rested its case, whereupon, the State rested.

The defendant's first proposition of error alleges that defendant was denied the right to a fair trial by the court's refusal to grant a continuance as requested by the defendant so as to have psychiatric examination at his own expense. The defense argues that denial of a motion for continuance of the sanity hearing on April 8, 1974, and denial for the trial on April 9, 1974, denied defendant a fair trial. Defense submits that if defendant had been able to obtain a psychiatrist's evaluation

that, first, the defense could have shown he was not mentally competent to aid his counsel, and second, that defendant was insane at the time of the crime. Further, a qualified psychiatrist would have been able to give the jury a positive analysis of defendant's mental condition, as Dr. Roberson was unable to do. In the transcript of the Sanity Hearing Proceedings, at page 39, we find the following:

[Mr. Humphrey]

"Q: Do you say that he is psychotic?

"A: I don't know that I am qualified that he is psychotic.

"Q: Why are you not qualified?

"A: I am not a psychiatrist."

Further, at the murder trial, page 203:

"Q: You are not a psychiatrist, are you?

"A: No, sir, I am not.

"Q: You are not telling me that he was psychotic on that day or any other day, are you?

"A: I am saying that he has been irresponsible several times.

"Q: Right; irresponsible but psychotic, was he psychotic?

"A: That would be a psychiatric diagnosis, and I am not a psychiatrist.

"Q: Then if you are not a psychiatrist you cannot give a psychiatric evaluation then, can you, Doctor?

"A: No. . . ."

Further, defense contends that the State's witness during the sanity trial was not a certified psychiatrist; and, therefore, defendant was deprived of ever being examined by a psychiatrist. Defense cites 22 O.S.1971, § 584, as authority that the court may, at its discretion, direct a trial to be postponed to another day in the same term or the next.

██ The defendant was not seeking a continuance to obtain the presence of a witness to the crime or an alibi witness, and defendant had ample time to secure a private psychiatrist prior to the date of trial. The record reveals that the defense knew as of March 4, 1974, that insanity would be the defense presented. Defendant, at that time, filed a motion for continuance of the preliminary hearing. The defense had approximately one month to obtain the services of a private psychiatrist, which we deem as ample time. Defendant further contends that the money was not raised by his family until April 6, 1974. Even so, it is within the sound discretion of the trial court to grant a motion for continuance. We do not feel the court has abused its discretion. Stidham v. State, Okl.Cr., 507 P.2d 1312 (1973); Allen v. State, Okl.Cr., 507 P.2d 606 (1973); Robertson v. State, Okl.Cr., 503 P.2d 896 (1972).

Defendant's second proposition of error asserts that defendant was denied his right to equal protection and due process of law required by the Fourteenth Amendment. The defense argues that, due to the fact that defendant was indigent, he was not able to hire a psychiatrist to evaluate his competency to stand trial and to testify as to his sanity at the time of the crime.

██ In Stidham v. State, supra, this Court held that the State's psychiatrist's report stating that defendant accused of murder was not mentally ill according to the laws of the State, was able to distinguish between right and wrong, and was capable of advising his attorney in his own defense was sufficient under statute providing that case will proceed if doctor's opinion is that patient is presently sane. 22 O.S.1971, § 1172. The question of sanity at the time of the commission of the alleged offense is a question of fact for the jury. Stidham v. State, supra, quoting from O'Dell v. State, Okl.Cr., 455 P.2d 750 (1969). Further, the testimony of experts as to defendant's sanity at the time of the psychiatric examination is only evidence to be considered along with other testimony on the issue of sanity at the time of the alleged offense. The expert's testimony is not conclusive on the issue of mental ca-

pacity. Jones v. State, Okl.Cr., 479 P.2d 591 (1971).

In the instant case, even though the defendant was never examined by a certified psychiatrist, the examination of the State's physician is sufficient to satisfy the requirement of 22 O.S.1971, § 1173, which provides that the case shall proceed if, in the doctor's opinion, the patient is "presently sane." Therefore, we find the second proposition to be without merit.

Defendant's third proposition of error is that the prosecuting attorney made improper remarks in the State's closing argument, which were prejudicial to the defendant (Tr. 235):

> "You are all reasonable people. I believe you are. I have had a chance to talk to you earlier this morning, or yesterday. I ask you, do you realize, or do you feel, or do you know that this man wouldn't be sitting here if he wasn't competent to stand trial? . . . Don't kid yourself.
>
> "Let's look at the acts of the defendant in relationship----"

We note at the outset that the prosecution was interrupted before he could state the evidence and the conclusions to be drawn therefrom on which he premised his statement that the defendant was sane. Unquestionably, had the prosecutor been allowed to complete his statement he would have pointed to those acts to which he was about to refer, when interrupted, which demonstrated the sanity of the accused. The objection interposed was premature and based on the testimony adduced at the trial, when viewed from the standpoint of the State, such a statement might have been reasonably inferred from the facts. We further observe that the defense invited the comments of the prosecuting attorney, as follows:

[Mr. Hefley]

> "Dr. Roberson was fair. He said, 'I wasn't out there on December 8th. I

don't know.' Now, if you can say that man is not less than honest you've got a long ways to go, and what did he say? He says, 'He hasn't been rational since he came back from Vietnam.' He hasn't been rational; he is incompetent, but he didn't know at that particular time because he wasn't there. (Tr. 224)

> *     *     *     *     *     *

> "I think we have met our burden. That man is not sane. Dr. Roberson stated that he hasn't been sane for six years. He may never be sane. It might be that he should be hospitalized. That is a question I ask you to decide. (Tr. 229)

> *     *     *     *     *     *

> ". . . He comes and goes, but they failed to prove that he is sane. I think we have raised the doubt as to his insanity. . . . It stands unrefuted. (Tr. 230)

> *     *     *     *     *     *

> ". . . The only thing they are hanging their hat on, ladies and gentlemen of the jury, Mike Chaffin told you that Dr. Roberson said he didn't know on December 8th because he wasn't out there, but he was prior to; he has been afterwards, ever since he has been back from Vietnam he hasn't been normal. He has been drawing this disability, been receiving psychiatric help." (Tr. 231)

We are of the opinion, and therefore hold, that under the particular facts of this case, and in view of the overwhelming guilt of the defendant, this alleged error did not contribute to the verdict of the jury. Moreover, we observe that the question of the defendant's present sanity had been resolved by a jury trial and the issue before the jury was the sanity of the defendant at the time of the commission of the offense. The court properly instructed the jury on this offense.

In light of the foregoing, we are of the opinion that the judgment and sentence ap-

pealed from should be, and the same is hereby, affirmed.

BUSSEY, J., concurs.

BRETT, P. J., dissents.

BRETT, Presiding Judge (dissents):

I must dissent to this decision because I believe the trial court erred in refusing to grant the continuance which defendant sought and that that error denied the defendant a fair trial.

The defendant in this case was charged conjointly with his wife, Beryl Kaulaity. The case was set for a joint trial on April 8, 1974. Each defendant was present on that date and was represented by a separate attorney. Both attorneys were also present on the morning of trial. On that morning, before the trial began, two motions were presented to the trial judge: a Motion to Sever the Trial of Beryl Kaulaity from that of her husband; and, on behalf of Robert Kaulaity, a Motion for a Continuance so that he might be examined by a psychiatrist.

The defendant was in jail at the time the motion was made, having been unable to post the bond set. His attorney was court appointed. That attorney told the court in support of his motion for a continuance that Kaulaity's family had been attempting to raise money to pay a psychiatrist and had succeeded in so doing just prior to the time the motion was made. The defendant had not been examined by a certified psychiatrist; the State physician who had examined the defendant was a Cuban refugee who was a medical doctor, but not a psychiatrist, and who was not licensed to practice outside State institutions. The record reflects that the defendant had a continuing history of erratic behavior since his release from a psychiatric ward where he was confined after being returned from Viet Nam.

The Motion for a Continuance was denied. The Motion for a Severance of the trial of Beryl Kaulaity, however, was granted, it being determined that the two defendants should not be tried during the same jury term.

There is no doubt that the State was prepared to try either or both defendants. Beryl Kaulaity's attorney was present, along with the witnesses he had subpoenaed. There is no indication that he was unprepared for trial, and he made no motion for a continuance.

The court made its decision about which defendant should be tried that day after asking the District Attorney which defendant he wished to try.

Counsel for Robert Kaulaity renewed his argument that the State could proceed to try Beryl Kaulaity without any inconvenience and emphasized again that the reason his client had not been examined by a private psychiatrist was that the money had not been previously available.

Commenting that the State's physician, Dr. Pardo, was under subpoena to testify for the State in the case of Robert and not in the case of Beryl, the court overruled the defense objections. In fact, however, Dr. Pardo did not testify at the trial itself; he testified only at the Banity hearing which preceded the trial.

I cannot concur in the majority's conclusion that the trial court's decision to deny the continuance, under all the circumstances detailed above, was not an abuse of discretion. In fact, the circumstances of this case are not dissimilar to those of United States ex rel. Robinson v. Pate, 345 F.2d 691 (7th Cir. 1965) which compelled that Federal Circuit Court of Appeals to state:

"We recognize the severe pressure upon the state criminal courts to dispose of cases with dispatch in order to maintain a reasonable currency between indictment and trial. This salutary goal, however, must not be reached at the expense of constitutional rights. Robinson's trial was conducted under an undue preoccupation with hurried disposition in an atmosphere charged with haste, hardly

consistent with the gravity of a capital case and protection of the right to due process. One result of the unusual haste was denial to Robinson, an indigent represented by court-appointed counsel and obviously without funds to pay for expert psychiatric testimony, of a fair opportunity to obtain volunteer expert testimony from a public agency." (Footnotes omitted) 345 F.2d at 692, 693.

That court also pointed out in the same decision that "the denial of a reasonable request to obtain the services of a necessary psychiatric witness is effectually a suppression of evidence violating the fundamental right of due process." id at 695.

I would reverse the conviction of this defendant and remand this case for a new trial in accordance with fundamental due process.