**UNITED STATES of America ex rel. Francisco CASTILLO, Relator-Appellant,**

v.

**Edward M. FAY, as Warden of Greenhaven State Prison, Stormville, New York, Respondent-Appellee.**

**No. 534, Docket 29185.**

United States Court of Appeals
Second Circuit.

Argued June 16, 1965.

Decided July 28, 1965.

Leon B. Polsky, New York City (Anthony F. Marra, New York City, on the brief), for appellant.

Malvina H. Guggenheim, Asst. Dist. Atty., New York City (Frank S. Hogan, Dist. Atty. for New York County, and H. Richard Uviller, Asst. Dist. Atty., New York City), for appellee.

Before KAUFMAN, HAYS and MARSHALL, Circuit Judges.

HAYS, Circuit Judge:

The relator-appellant Castillo was tried and convicted by a jury in a New York state court for the unlawful sale of heroin. He was sentenced to imprisonment for a period of from five to six years. The judgment was affirmed on appeal. People v. Castillo, 16 A.D.2d 235, 226 N.Y.S.2d 785 (1st Dep't) (3-to-2 decision), aff'd mem., 12 N.Y.2d 732, 186 N.E.2d 198, 233 N.Y.S.2d 938 (1962). State court remedies were exhausted by the denial by another New York court of a petition for a writ of habeas corpus. A petition in the federal district court was

denied on the basis of the trial transcript and other state court records. We affirm.

Two issues were raised and rejected below and are renewed on appeal: (1) whether the prosecutor's trial conduct and his summation before the jury in the state court deprived Castillo of a fair trial in violation of the due process clause of the Fourteenth Amendment; and (2) whether Castillo's rights under the Fourth and Fourteenth Amendments were violated by reference at his trial to evidence found in the course of a search which, it is claimed, was illegal under the rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

### I.

We have considered each of the points made by appellant as to the conduct of the prosecutor at the trial. The weightiest of these points concerns the prosecutor's remark in his summation concerning the principal government witness:

> "The issue in this case is very important, but it is a relatively simple issue: Is Detective Schiano a liar, or is he truthful? If he is telling the truth, then it is your sworn obligation to convict. If he is a liar, then you must acquit. By your verdict you will judge whether Detective Schiano is an honest, faithful, courageous public servant, or whether he is a perjurer and a cheat who does not belong on the police force or does not belong in any public service." 16 A.D.2d at 237–238, 226 N.Y.S.2d at 788.

The language distorts the issues of the trial and is therefore offensive to the proper conduct of the trial. It can hardly be excused, as is argued, by remarks of defendant's counsel which are called "provocative." The prosecutor's remarks should not have been made and the New York Appellate Division, which divided three to two on the point, might well have been justified in ordering a new trial.

But whatever error the state court may have committed in failing to grant a new trial, the defect in the trial did not attain constitutional proportions. The prosecutor's conduct did not create a situation so prejudicial to appellant that he was denied a fair trial within the meaning of the due process clause of the Fourteenth Amendment.

"The speeches of counsel for defendants apparently provoked statements by the District Attorney of which petitioners now complain. This does not raise a due process question.

"As we have recently said, 'it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality.'" Buchalter v. New York, 319 U.S. 427, 431, 63 S.Ct. 1129, 1132, 87 L. Ed. 1492 (1943), quoting Adams v. U. S. ex rel. McCann, 317 U.S. 269, 281, 63 S.Ct. 236, 87 L.Ed. 268 (1942).[1]

Conduct of state prosecutors which it was contended was unfair and prejudicial has consistently been held on collateral attack in the federal courts to fall short of constituting a lack of due process. See, e. g., Burwell v. Teets, 245 F.2d 154, 168 (9th Cir.), cert. denied, 355 U.S. 896, 78 S.Ct. 271, 2 L.Ed.2d 194 (1957); United States ex rel. Burke v. Denno, 243 F.2d 835 (2d Cir.), cert. denied, 355 U.S. 849, 78 S.Ct. 76, 2 L.Ed. 2d 58 affirming 148 F.Supp. 498 (S.D. N.Y.1957); Sampsell v. People of State of California, 191 F.2d 721 (9th Cir. 1951), cert. denied, 342 U.S. 929, 72 S.Ct. 369, 96 L.Ed. 692 (1952). See,

---

1. For a discussion of the summation complained of see People v. Buchalter, 289 N.Y. 181, 228–230, 45 N.E.2d 225, 249– 250 (1942) (Lehman, J., concurring), aff'd, 319 U.S. 427, 63 S.Ct. 1129, 87 L. Ed. 1492 (1943).

however, Pike v. Dickson, 323 F.2d 856, 858 n. 3, 860–861 (9th Cir. 1963) cert. denied, 377 U.S. 908, 84 S.Ct. 1164, 12 L.Ed.2d 179 (1964).

## II.

Petitioner's second point relates to the admission of testimony concerning material found in a search of Castillo's room. The State does not contest the claim that the search was conducted in violation of Castillo's Fourth and Fourteenth Amendment rights. The issue is whether, where a state court judgment is collaterally attacked in a federal court, the rule of Mapp v. Ohio, supra, is properly applicable to a situation in which the admissibility *vel non* of the challenged evidence is so close a question as to render the correctness of either answer extremely doubtful. We believe that if we are to upset a state conviction on constitutional grounds we ought to be able to find a more robust basis for doing so than the present case affords.

At the state court trial on direct examination of a police officer the following took place:

"Q. [by the prosecutor] Did you search the apartment? A. Yes, we gave it a search.

"Q. Did you find anything? A. Yes.

"[Prosecutor] * * *: Your witness."

Relator argues that by this exchange the prosecutor left the jury to infer that incriminating evidence had been found and put defense counsel in the difficult position of either moving to strike the testimony or eliciting from the witness exculpatory testimony that might allay the jury's suspicions.

Defense counsel thereupon asked on cross-examination whether narcotics were found, to which question the answer was negative.

On redirect the prosecutor, over defendant's objection, brought out that in the course of the search a wire clothes hanger and a silk stocking, instruments used in cutting narcotics, were found. The trial judge ruled on defendant's objection that defense counsel had "opened the door" by asking whether narcotics had been found.

On this appeal the appellant argues that, since it was the prosecutor's tactics which made it necessary for the defense to ask the question as to the search, the question did not have the effect of opening the door to the prosecution for introducing further evidence on the search and that the introduction of such evidence violated appellant's rights under the rule of the Mapp case.

Although we would affirm on this very narrow issue of "who opened the door?", Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); United States v. Rivera, 346 F.2d 942 (2d Cir. June 11, 1965), the question is a very close one, as the strength of the dissent's arguments indicates.

It should be noted that at the time of Castillo's trial in April 1961 illegally seized evidence could still be admitted in the state court under Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1350, 93 L.Ed. 1782 (1949). The prosecutor did not bring up the search in knowing violation of Castillo's constitutional rights, since Mapp v. Ohio, supra, was not decided until June 1961. Indeed, the Mapp rule is applicable to Castillo's case only because the final decision of his appeal postdated the decision in Mapp. See Linkletter v. Walker, 85 S.Ct. 1731, p. 1734 n. 5 (1965).

We do not believe that the purpose of the exclusionary rule of Mapp v. Ohio is well served by holding in such a doubtful case and on collateral attack, that constitutional rights have been infringed, when the contention on which the holding is based has been rejected in the trial court, two state appellate courts, and the federal district court. Where the issue of whether or not the fruits of an illegal search can be used turns on whether the prosecutor overstepped the bounds of a subsequent appellate decision, or wheth-

er the tactics of opposing counsel gave him leave to do so, the police are not likely to be deterred in taking the chance of finding useful evidence by an illegal search.

█ It is the duty of the federal courts to vindicate, where necessary by habeas corpus relief, federal constitutional rights; it is not, however, our function to supervise state courts in the procedure by which those rights are judicially administered unless the procedure and rules applied in the state court are so fundamentally unfair as to undermine the federal guarantee.[2] Where as in this case, the error, if any, is a highly technical error of local trial practice, it would seem an inappropriate occasion for the exercise of the power of the Great Writ.

In United States v. Guerra, 334 F.2d 138, 146 (2d Cir.), cert. denied, 379 U.S. 936, 85 S.Ct. 337, 13 L.Ed.2d 346 (1964), we said:

"The day has certainly not come when courts will set a convicted criminal free for no reason other than that some practice of police or prosecution—wholly unrelated to the conviction itself—did not meet with their approval. If that unhappy day should ever arrive, the often-heard criticism that law and lawyers are interested only in 'technicalities' will have a ring of truth, and courts may rightfully be accused of exalting form above substance."

See United States ex rel. Townsend v. Ogilvie, 334 F.2d 837, 843–844 (7th Cir. 1964).

Affirmed.

KAUFMAN, Circuit Judge (concurring):

I fully agree with my brother Hays that the prosecution's summation, especially when viewed together with defense counsel's provocatory statements, did not render Castillo's trial fundamentally unfair in Fourteenth Amendment Due Process terms. I am also in complete accord with the conclusion that the error, if any, committed in referring to the impermissible search was too technical to rise to constitutional proportions, particularly when considered in light of the objective which the exclusionary rule seeks to achieve. My concurrence, however, rests on a broader consideration of the dynamics of the trial we are reviewing and, therefore, I deem it appropriate to set forth briefly my interpretation of what occurred.

At the conclusion of the direct examination of the arresting detective, he was asked if he searched Castillo's furnished apartment and if he found anything, responding affirmatively to both questions. Defense counsel immediately began his cross-examination, failing to request the trial judge to admonish the jury not to draw any inferences from this testimony or to speculate about what was found. Moreover, he did not move for a mistrial or to strike the detective's answers.[1]

---

2. The standards by which we determine on direct review of federal criminal trials whether an objection to the admissibility of improper evidence has been waived by the objectant's prior use of similar testimony have been set forth in United States v. Beno, 324 F.2d 582, 588–589 (2d Cir. 1963). As we said, in reversing a federal criminal conviction:

"[I]t makes little sense to insist that once incompetent evidence is erroneously admitted, the error must of necessity be compounded by 'opening the door' so wide that rebutting collateral, inflammatory and highly prejudicial evidence may enter the minds of the ju-

rors. In short, a small advantage improperly obtained does not compel the exaction of a gross disadvantage in penalty, particularly where a tarnished verdict is the inevitable result." *Ibid.* See generally 1 Wigmore, Evidence § 15 (3d ed. 1940 & 1964 Pocket Supp.).

1. Surprise cannot excuse the omissions because Castillo's prior trial for the same offense, in which he was represented by the same counsel, was aborted when the trial judge declared a mistrial because the testimony concerning what the search uncovered was "irrelevant, inflammatory, and prejudicial."

Rather, after extended general cross-examination dealing with the post-arrest events, he asked the detective whether narcotics were found. The answer was negative.

Subsequently, on re-direct examination, the Assistant District Attorney inquired, "Did you find anything relating to narcotics in that apartment?" The detective responded affirmatively and, in answer to a further query, said, "I found an instrument which I know to be used * * * in the cutting of narcotics." It was only at this late stage that the defense saw fit to exercise an objection, moving to strike the last answer—and not, I emphasize, the whole series of questions and answers. The trial judge denied the motion, explaining "You opened the door. You asked him about narcotics. And I think anything relating to it is now admissible. If you hadn't asked the question, I would have sustained the objection." Significantly, defense counsel did not rejoin that the prosecutor had opened the door, as he now claims; rather, by stating that "I only asked whether he had found any narcotics in the apartment," he revealed that his course was part of a carefully planned tactical maneuver to bring before the jury evidence which he considered favorable to his client and then to seek refuge from anything which would bring before that jury the balance of the circumstances.

This strategy was pursued still further when Castillo took the stand in his own defense, stating clearly and succinctly that he had never used, never sold and "never had need to help anybody else sell narcotics." This precipitated further cross-examination by the State to which the defendant now objects.[2] It is interesting that only at this belated juncture in the trial did the defense ask, unsuccessfully, that a juror be withdrawn. Finally, it is noted that the summation for the defense alluded, in accordance with the well-laid trial tactics, to the testimony that "no narcotics were found after a search of the furnished room where Castillo actually lived."

This appeal, like others which receive the attention of this court, seems to be largely devoted to salvaging strategic blunders committed in the trial court through indecision, inadvertence, or, as in this instance, as an aspect of the principle of party autonomy. According to this latter view, the party, because of his interest in the conduct of his case, has a right to decide the technique to be employed in the exposition of his defense and must assume the initiative, indeed, the responsibility, of assuring that his contentions are advanced at the appropriate time and in the appropriate manner. The practical impact of this rule is to preclude the parties from burdening the appellate system with their second thoughts when their calculated judgments at the trial have proven to be unwise. In short, the misguided efforts or deliberate tactics of counsel cannot on appeal be converted, and attributed, to blunders of the trial judge. See Hazard, "After the Trial Court—The Realities of Appellate Review," in "The Courts, The Public and The Law Explosion" (The American Assembly, Columbia University, Jones ed., 1965). Here, as the foregoing discussion demonstrates, we have a clear case of counsel's judgment to gamble on the prosecutor's actions back-

2. As in Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), the testimony elicited by Castillo's own counsel permitted the prosecution to show, solely for the purpose of impeaching the defendant's credibility, that tools of the narcotics trade were found in the apartment, albeit during an unlawful search. Mr. Justice Frankfurter's words are precisely in point: "The defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed any narcotics. * * * There is hardly any justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." 347 U.S. at 65, 74 S.Ct. at 356. See also United States v. Rivera, 346 F.2d 942 (2d Cir. June 11, 1965).

firing. This miscalculation, without more, does not justify the remedy sought.

Under these circumstances, to grant federal relief upsetting the conviction would in my opinion mischievously abuse the Great Writ and improperly tamper with the finality of a state court judgment upon non-constitutional grounds. The Fourth Amendment contentions are, on the record before us, extremely tenuous and concern only a minor aspect of trial strategy that does not approach the constitutional line necessary to justify federal interference. Only in the most unusual, extraordinary situation, which we do not have here, can such alleged evidentiary errors rise to constitutional dimension. Otherwise, the rulings made by state court trial judges would be open to second-guessing not only by the state appellate systems but by the federal courts as well. In habeas corpus proceedings, the federal court

> "does not possess a residuum of power to search the record for procedural errors not involving constitutional rights and issue a writ of habeas corpus for the purpose of providing a new trial in the state court.

> A federal court acting in this fashion would constitute a super appellate tribunal and encroach upon state appellate court prerogatives; such action would affront the principles of federalism upon which our federal-state juridic system operates." United States ex rel. Townsend v. Ogilvie, 334 F.2d 837, 843–844 (7 Cir. 1964), cert. denied, 379 U.S. 984, 85 S.Ct. 683, 13 L.Ed.2d 574 (1965).

Accordingly, I concur in affirming the order denying Castillo's petition for a write of habeas corpus.

MARSHALL, Circuit Judge (dissenting):

I agree with my brothers that the prosecutor's statements in open court were not so inflammatory as to render the trial constitutionally unfair. However, the accused's constitutional rights guaranteed by the Fourth and Fourteenth Amendments were violated by the admission of testimony of a prosecution witness describing the fruits of an illegal search, and I believe that the writ of habeas corpus should be granted on this ground. I therefore dissent.

Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), held that for state trials the Due Process Clause of the Fourteenth Amendment required the exclusion of all evidence obtained in violation of the search and seizure provision of the Fourth Amendment. Admittedly, this search was unconstitutional and it is also undisputed that the admission of oral testimony describing the fruits of the search was equivalent to the admission of the fruit itself, especially since the testimony characterized the matter found as "an instrument * * · * used * * * in the cutting of narcotics." It would thus seem, as a prima facie matter, that the exclusionary rule of Mapp v. Ohio was violated.

In a sense the State does not deny this. Instead, it takes the position that this violation of the exclusionary rule was justified because defense counsel had "opened the door." The state trial court, which introduced the door-opening concept into this case, did not make this judgment, for Mapp v. Ohio was decided only after the trial was completed. Yet even if that court had reached the question, it would not foreclose the federal habeas court. Whether defense counsel's conduct, described by the state trial court as "opening the door," justified the admission of evidence otherwise constitutionally required to be excluded is a federal question; it is for a federal court to independently assess the sufficiency of the purported justification.

I do not believe that the conduct of the defense counsel justified the admission of this evidence. It was the prosecutor, not the defense counsel, who brought up the whole matter of the search, even though a similar attempt to introduce testimony relating to the search had, on the first trial, resulted in a mistrial. In that trial, the judge char-

acterized testimony relating to the search as "irrelevant, inflammatory and prejudicial" and it is difficult to perceive what legitimate interest the prosecutor sought to satisfy by reintroducing the search in the second trial. What the prosecutor lacked in concern for fairness he made up for in his shrewdness.

> Q. Did you search the apartment? A. Yes, we gave it a search.
>
> Q. Did you find anything? A. Yes.
>
> [Prosecutor]: * * * Your witness.

The officer's carefully solicited affirmative answer, high-lighted by the immediate termination of the questioning, was prominently pregnant with adverse inferences. The door the defense counsel was charged with subsequently opening was now open. Defense counsel then sought to close the door, to allay the jury's suspicion, and he did so by asking whether narcotics were found, to which question he received the unusually measured answer, "I did not find any narcotics in that apartment." It was this last exchange that, according to my brothers, rendered the officer's later[1] description of the fruits of his unconstitutional search constitutionally tolerable.

In reality then, it is the door-closing technique chosen by defense counsel and not the fact that he opened any doors which is held to justify that violation of the Mapp v. Ohio exclusionary rule. This seems to me, not as my brothers suggest, to defer "to local trial practice" or to respect "the principles of party autonomy," but to deprive an accused of certain of his constitutional rights because defense counsel fell into the trap unconscionably laid by the prosecutor. I find this intolerable. Of course, defense counsel could have moved to strike the line of questioning initiated by the prosecutor instead of inquiring whether the "anything" found was narcotics. However, the accused's constitutional rights should not be made to hinge on our retrospective evaluation of the technique used to avoid the trap, and, in any event, it is not at all clear that an order granting a motion to strike would have been granted, or, if granted, whether it could have effectively allayed the suspicion the prosecutor had deliberately planted in the jurors' minds.

Thus the admission of the officer's testimony describing the fruits of an illegal search violated the accused's federal constitutional rights; and since there is a reasonable possibility that this evidence contributed to the verdict, an issue upon which we seem to all agree, the accused is constitutionally entitled to a new trial. Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). It demeans the Great Writ to deprive the accused of its assistance, as my brothers do, because they are of the opinion that this error is not sufficiently "robust."

I would reverse.

1. It is passing strange to find my brothers invoking, though somewhat obliquely, Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 303 (1954). The accused testified subsequent to the testimony describing the fruit of the illegal search, and thus it could hardly be said that this testimony was introduced in order to rebut an untruthful statement by the accused. Moreover, it is possible that the accused's later testimony, in which he denied selling or using narcotics, fell within the exception set out by Mr. Justice Frankfurter in Walder: the accused "must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured * * *" 347 U.S. at 65, 74 S.Ct. at 356.