William H. COKLEY, #38915, Petitioner,

v.

The PEOPLE of the STATE of COLORADO and Wayne K. Patterson, Warden of the Colorado State Penitentiary, Respondent.

Civ. A. C–1341.

United States District Court,
D. Colorado.

Oct. 15, 1969.

Gary Lozow, Denver, Colo., for petitioner.

Duke W. Dunbar, Atty. Gen., John P. Moore, Deputy Atty. Gen., and Michael T. Haley, Asst. Atty. Gen., Denver, Colo., for respondent.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This matter is before the Court on petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is presently incarcerated in the Colorado State Penitentiary under sentences imposed after conviction of the crimes of robbery and conspiracy to commit robbery.

Petitioner was convicted in 1966 in Denver, Colorado. He appealed to the Supreme Court of Colorado, raising the issues presented in this petition. His conviction was affirmed on direct appeal in Cokley v. People, Colo., 449 P.2d 824 (1969). No problem of exhaustion of remedies is presented. See Canales v. Baker, 406 F.2d 685 (10th Cir. 1969).

We have read the record of the state court proceedings, the briefs submitted in this proceeding, and considered the evidence adduced at the hearing. We conclude that petitioner is not entitled to relief.

Petitioner's first claim is that his trial counsel was improperly limited in his cross-examination of a witness, consequently petitioner's constitutional right to confront the witnesses against him was impaired. See Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The question propounded by the attorney called for a conclusion on the part of the witness as to the ability of other witnesses to see the defendant.[1]

We agree with petitioner that the ability to thoroughly cross-examine witnesses is the "essence of a fair trial." Alford v. United States, 282 U.S. 687, 51

---

[1] The transcript of the trial reveals this exchange:
"Q. It was your statement that you were pushed down on the floor by one of three or four parties.
"A. Yes.
"Q. And you were down on the floor most of the time.
"A. Yes, most of the time. Not all of the time, but most of the time.
"Q. First, someone said, "This is a holdup." Then you were pushed down on the floor most of the time.
"A. Yes.
"Q. Then you got up once to tell them that the old man couldn't open the safe.
\*　　\*　　\*　　\*　　\*
"Q. Isn't that correct Mrs. Sanchez?
"A. Well, yes.

"Q. Then you got back down?
"A. I think I did.
"Q. Now isn't it true, Mrs. Sanchez, that Mr. Durston and Mrs. Gathright had the same or better opportunity to identify anybody?
"A. Yes.
"MR. CLARKE: May it please the Court, that would be pure conjecture.
"THE COURT: The objection is sustained.
"Q. (By Mr. Kintzele) If you know, Mrs. Sanchez, did they have a better view?
"MR. CLARKE: May it please the Court, that again would be pure conjecture.
"THE COURT: Sustained.

S.Ct. 218, 75 L.Ed. 624 (1931). We also agree that the cross-examiner has the right to place the witness in his or her proper setting. Smith v. Illinois, 390 U. S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). But we do not think that this right contemplates a total absence of procedural rules governing the admissibility of evidence. The function of the lawyer in cross-examining witnesses is to elicit facts for consideration by the jury. Drawing conclusions from the facts is within the province of the jury, not the witness. 2 Wharton's Criminal Evidence § 493 (1955) p. 315.

■■ Here the attorney could have placed the witness in her "proper" physical setting with relation to the other witnesses to the robbery. From these physical facts the jury could have drawn its own conclusions as to who had the better opportunity to view the persons committing the robbery. We think that the trial court was correct in its ruling. But even if it was wrong, the error was certainly not of constitutional significance, and it is not our function to supervise state court procedures. United States ex rel. Castillo v. Fay, 350 F.2d 400 (2d Cir. 1965).

■ Petitioner's next contention is that remarks made by the Assistant District Attorney in his closing argument, affirming his personal belief in the guilt of the defendant, denied petitioner the fair trial guaranteed by the Fourteenth Amendment.[2] Clearly the sort of argument used by the prosecutor in this case is improper and ought not to be permitted. But again, the error is not of constitutional significance. The jury was properly instructed that closing argu-

ments are not evidence and that their verdict was to be based solely on the legal evidence produced at the trial. The remarks, particularly in this context, were not so prejudicial as to deny petitioner a fair trial. Similar conduct on the part of state prosecutors has consistently been held not to have presented a constitutional due process issue. See United States ex rel. Colon v. Follette, 366 F.2d 775 (2d Cir. 1966); United States ex rel. Castillo v. Fay, *supra*.

In reaching our conclusion we are not unmindful of the comments of the United States Supreme Court in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), cited by petitioner. There a conviction was set aside on the basis of the prosecutor's improper conduct. But the reversal was procedural, not constitutional. In addition the error was "pronounced and persistent, with a probable cumulative effect upon the jury * * *." 295 U.S. at 89, 55 S.Ct. at 633. Here the asserted error is based on a single instance. See *Berger* at 89, 55 S. Ct. 629.

We have found no cases in which improper argument of the prosecutor has amounted to constitutional error. In many of the cases examined, the arguments have been much more offensive than that in the case at hand. See, e.g., United States ex rel. Castillo v. Fay, *supra;* Chavez v. Dickson, 280 F.2d 727 (9th Cir. 1960). This point is of no avail to petitioner.

Petitioner next urges that the trial court was in error in admitting certain statements made by petitioner while he was being held for investigation by the Denver police, because the statements

---

2. In his closing argument before the jury the Assistant District Attorney commented as follows:
   "I say without doubt, without reservations, without pain to my conscience that Mr. Cokley is guilty of the offense of aggravated robbery.
   "MR. KINTZELE: I object to this, Your Honor. I don't think that the Prosecution is ever entitled to comment upon the guilt or the innocence of a defendant.

"THE COURT: The objection is overruled. Go ahead.
   "MR. CLARKE: Again, Ladies and Gentlemen, I say without pain to my conscience, and without any reservation of my mind, that Mr. Cokley is guilty of the aggravated robbery which occurred on December 11, 1965; that he conspired with the parties to commit this act of aggravated robbery against this young lady, Nina Gathright, on this particular night.

were involuntarily made. Petitioner does not specifically raise Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), even though that case is applicable since petitioner's trial began after *Escobedo* had been decided. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

■■ Petitioner does, however, urge that *Escobedo* and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) are important as guides in determining voluntariness since the specific rules of those cases are aimed at that general issue. We agree. See Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). But we do not agree that petitioner's statements were involuntary. Rather they were made after a full and repeated advisement of his rights. The record indicates that petitioner made no request to see a lawyer. He was advised four times, by four different police officers, that he had a right to remain silent, that anything he said could be used against him in a court of law, and that he had the right to talk with a lawyer before making a statement. We think that this is sufficient to remove any doubt at all that petitioner's statement was made involuntarily. See Otney v. United States, 340

F.2d 696 (10th Cir. 1965) (concurring opinion); State v. Sherrick, 98 Ariz. 46, 402 P.2d 1 (1965); Davidson v. United States, 236 F.Supp. 264 (W.D. Okl. 1964).

■ Nor do we agree that allowing Detective Brannan to testify that petitioner refused to answer further questions was error. This is not a case such as Walker v. United States, 404 F.2d 900 (5th Cir. 1969), cited by petitioner. There the evidence of the defendant's refusal to answer questions was introduced for the sole and obvious purpose of inducing the jury to draw an inference of guilty knowledge from the assertion of a constitutional right. Here that is not the case. Nor was the evidence here introduced for the purpose of impeaching statements made by petitioner at trial. Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). Instead, here the evidence of petitioner's refusal to answer was merely the conclusion of a conversation which was introduced by the prosecution solely to rebut the testimony of a defense witness.[3] We think this falls far short of the comment on invocation of the privilege which is condemned by the Constitution. See Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

---

3. Petitioner had produced an alibi witness who testified that he had been with petitioner in the Crystal Bar on the night and at the time in question. Following is the testimony of Detective Brannan used to rebut this witness:

"Q. (By Mr. Clarke) Sergeant Brannan, when you talked to Mr. Williams on December 20, 1965, did this conversation center around the Crest Drug Store incident?

"A. It did, and also on the night of his arrest, what had occurred.

"Q. I see. Now, did you ask him where he had been on the evening of December the 11th, 1965?

"A. I did.

"Q. What did he state?

"A. He stated that he was working at the Crystal Bar from 5:00 P.M. until 2:00 A.M. on that date.

"Q. Now did you check out this story?

"A. I did.

"Q. And then did you have occasion to see him again on December 22, 1965?

"A. I did, but I also saw him on the 21st.

"Q. And did you talk to him in respect to the story that he had given concerning his employment at the Crystal Bar?

"A. I did.

"Q. I see. What did Mr. Williams tell you at that time?

"A. He then told me that on December 11th, which was a Saturday, that he did not work there. It was the previous night, the Friday night that he worked. And then, he told me that on that night, the 11th, that while he had been in the Crystal Bar, most of the evening was spent with a girl named Brenda Jenkins at the "Burger & Shake," it's a restaurant in that area.

"Q. Now did you check out this story?

"A. I did.

"Q. And what did Mr. Williams tell you at that time?

"A. He refused to answer any further questions.

Finally, petitioner contends that his right of confrontation of witnesses was violated when the trial court allowed a police officer to testify that four witnesses had identified him at a line-up. Subsequently, this testimony was demonstrated to be erroneous.

Whether or not this evidence was hearsay is of course not the question before this Court.[4] Our concern is whether the error, if there was one, impaired petitioner's constitutional rights in any way. United States ex rel. Castillo v. Fay, *supra*. We find no authority for holding that it did.

Had the line-up witness who could not identify petitioner been unavailable at the trial, petitioner's right to confront and cross-examine might well have been impaired to the extent that he would be denied due process. See Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). But here that witness was present in the courtroom for at least part of the trial. That the state did not call him is of no consequence. He was certainly available for the defendant to call if he had chosen to do so. We cannot predicate constitutional error on the trial tactics of defense counsel. See Tafoya v. United States, 386 F.2d 537 (10th Cir. 1967); Hickock v. Crouse, 334 F.2d 95 (10th Cir. 1964), cert. denied, 379 U.S. 982, 85 S.Ct. 689, 13 L.Ed.2d 572 (1965). See also Leeper v. United States, 117 U.S.App.D.C. 310, 329 F.2d 878 (1964), cert. denied, 377 U.S. 959, 84 S.Ct. 1641, 12 L.Ed.2d 502 (1964), concurring opinion of Wright, J., wherein evidence of this nature was condemned, but the "substantial rights" of the defendant were held not to have been affected.

The issues raised by petitioner, taken separately or collectively, do not provide a basis for granting this petition. It is therefore

Ordered that this petition for writ of habeas corpus be and the same hereby is denied.

---

4. In Colorado, where petitioner's trial took place, it seems clear that such evidence is not even objectionable under the hearsay rule. See Gallegos v. People, 157 Colo. 484, 403 P.2d 864 (1965).